Argued December 6, affirmed December 14, 1966

# STUART ET AL v. WELDON ET AL, HINKLEY ET AL

421 P. 2d 367

*Richard A. Braman,* Portland, argued the cause for appellants. With him on the briefs were J. Robert Jordan and Thomas R. Mahoney, Portland.

*George M. Joseph,* Portland, argued the cause for respondents. On the brief were Reiter, Day & Wall, Portland.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

PER CURIAM.

This is an appeal from a decree of a three judge circuit court for Multnomah county which declared that the initiative petition for repeal of the Multnomah County Home Rule Charter was invalid for the lack of sufficient certified signatures at the time it was presented for filing with the Registrar of Elections for Multnomah county on July 7, 1966. The plaintiffs in this case are residents and taxpayers of Multnomah county who opposed the initiative proposed. Defendant Weldon is the Registrar of Elections for that county. He did not join in this appeal. The appellants are intervening defendants who favor the proposal. The trial court held that our decision in *Kays v. McCall,* 1966, 244 Or 361, 418 P2d 511, was decisive of the case. We agree.

The background of the case is this:

At the May 24, 1966, primary election the voters

of Multnomah county adopted a county home rule charter. The vote was certified by defendant Weldon, the Registrar of Elections for Multnomah county[1] on June 9, 1966. Opponents of the charter then began circulating initiative petitions to place a repeal measure on the ballot for the November 8, 1966, general election. The required number of signatures necessary to place the measure on the ballot was 20,286. By 5 p.m., July 7, 1966, only 13,779 signatures had been certified by the Registrar of Elections. Additional, unverified signatures had been submitted to the defendant Weldon by 5 p.m., July 7, 1966. However, none of these signatures were verified or certified by the defendant by 5 p.m. July 7. The verification and certification of the unverified signatures presented on July 7, was completed on July 13, 1966. The total number of signatures certified to be genuine on the latter date was 21,154, more than the amount necessary to place the measure on the ballot.

The pertinent constitutional and statutory requirements as they applied to a statewide initiative measure are set forth in our opinion in *Kays v. McCall* and need not be repeated, except as they are applicable to county initiatory elections.

ORS 203.780 (5) provides that:

"It is intended to make the procedure in county legislation, as nearly as practicable, the same as the initiative and referendum procedure for measures relating to the people of the state at large; * * * *"

In the statewide initiative process the Secretary of State is required to tally the number of signatures on

---

[1] In Multnomah county the Registrar of Elections performs the functions of a county clerk "* * * in connection with administering the election laws." ORS 246.300 (2).

the petitions that have been certified to him by the several county clerks as genuine signatures. In *Kays v. McCall* we held that the petitions submitted to the Secretary of State must contain signatures that had been verified before the constitutional deadline of four months preceding the date of election. ORS 203.780 (5) requires that the same deadline for certification applies to a county initiative procedure.

■ ORS 203.780 (2) provides that in a county initiative process the county clerk (Registrar of Elections in Multnomah county) shall perform the duties required of the Secretary of State in a statewide election. He must also, of course, perform the duty, imposed by ORS 254.040 (2), of certifying as genuine the signatures found on an initiative petition. In a county initiative process, therefore, the county clerk must not only perform the Secretary of State's function of receiving and filing the petitions, he must also determine how many of the petition signatures submitted to him are genuine.

It is this dual function of the county clerk that provides the only arguable distinction between this case and *Kays v. McCall*. It is contended here that because the county clerk has the duty to receive the petition as well as to verify the signatures, it is immaterial when he performs the latter duties so long as he receives the petition on or before the constitutional deadline, in this instance, July 7, 1966. The argument is advanced by saying that so long as the registrar has in his possession both the petition and the registration records with which to verify the signatures on the petition, verification was not required when the petition was received by the registrar on July 7, 1966.

■ The claimed difference is one of form only. The proponents of a statewide initiative petition must present the petitions to the county clerks in ample time for the several clerks to verify the signatures so that the petitions with the signatures verified may be filed with the Secretary of State prior to the deadline date. The statutes, as we discussed in *Kays v. McCall,* recognize and make provision for the time that must be allowed to the clerks to complete the verification process. The petitions are nothing more than pieces of paper bearing signatures until they are validated by the verification of the signatures and the certification of that validity upon each of the petitions. The validated petitions are then taken from the county clerks and carried to the Secretary of State for the performance of his duties.

The signatures on the petitions to initiate a county election also require verification before the petitions are valid and operable for their intended purpose. Until that is done, the petitions are likewise pieces of paper bearing signatures. This deficiency is not cured, as it is argued, by putting the petitions into the custody of the county clerk.

■ It is not material that in the state election the certified petitions must be physically taken from the county clerk to the Secretary of State for filing the petitions and that in a county election the petitions remain with the county clerk for the validating of the signatures and then filing the petitions. In either a state or county legislative election the verification of the signatures is required and must be done before the deadline fixed by the constitution and by statute.

■ If appellants' arguments were to prevail the county clerk could verify the signatures at any time after filing. This could result in a hiatus in which

neither the proponents nor opponents nor the voters would know if the measure were lawfully on the ballot until such time as the clerk saw fit to verify the signatures. In *Kays v. McCall* we said such a situation was "patently untenable" and would vitiate the constitutional deadline.

It is also argued, at some length, that the handing of the unverified petitions to Mr. Weldon, the registrar, was substantial compliance with the constitutional and statutory requirements. This also was answered in *Kays v. McCall*.

That decision is conclusive of this, and the decree is affirmed.