On petition for review filed May 20, petition denied
July 2, 1970

## HORNER'S MARKET, INC. ET AL, *Petitioners, v.* TRI-COUNTY METROPOLITAN TRANSPORTA- TION DISTRICT ET AL, *Defendants.*

471 P2d 798

■■■■■■

■■■■■■

■■■■■■

Robert Y. Thornton, Salem, submitted a brief for petitioners.

John D. Mosser; Donald J. Morgan; Wood, Wood, Tatum, Mosser & Brooks; John R. Hay; Davies, Biggs, Strayer, Stoel & Boley; Verne L. Newcomb; Jack B. Schwartz; and Sabin, Newcomb, Sabin & Meyer, Portland, submitted a brief amici curiae in support of petitioners' petition for review.

Before O'CONNELL, Chief Justice, and McALLISTER, SLOAN, DENECKE, HOLMAN, TONGUE and HOWELL,[*] Justices.

■■■■■■

PER CURIAM.

Plaintiffs seek to enjoin defendants from collecting an employer payroll tax levied against plaintiffs. Plaintiffs appealed to the Court of Appeals from a decree of the trial court dismissing the suit. The Court of Appeals affirmed the trial court decree,[1] whereupon plaintiffs filed this petition for review. We affirm.

Ordinarily we do not set forth in a written opinion the reasons for our denial of a petition for review. Where, however, a question of great public importance

[*] Howell, J., did not participate in this decision.
[1] Horner's Market v. Tri-County Transportation Dist., 90 Adv Sh 795, 2 Or App 288, 467 P2d 671 (1970).

is presented, we regard it as our duty to set forth the reasons for denying the petition for review.

We shall deal first with plaintiffs' contentions that ORS 267.105 constitutes an unconstitutional delegation of legislative power and a disenfranchisement of those persons in the district who are not residents of the city of Portland. That section provides, in part, that:

> "(1) The governing body of the most populous city in a standard metropolitan statistical area may by resolution propose creation of a mass transit district, if that city has a local transit system and if the governing body finds that area-wide mass transit needs cannot be met by local transit operation."

Although this section is cast in terms of a proposal by the city to create the district, the practical effect of the statute is to vest in the city the power to create the district inasmuch as there is no other condition precedent to the existence of the district except the appointment of the members of a board of directors by the Governor, a duty which is imposed upon the Governor in mandatory terms.

We have, then, a power vested in the city to subjugate persons outside the city to certain controls and burdens, including the burden of taxation, imposed by the district board without affording such persons a voice in deciding whether these burdens should be imposed.[2]

_____

[2] Although most ordinances of the district board would be subject to a district referendum, the board has the power to invoke an emergency clause when circumstances warrant. The effect of this clause is to make the ordinance immediately effective and preclude a referendum from preventing collection of the tax. The board inserted an emergency clause in the taxing ordinance which

There could be no question of the power of the legislative assembly to directly create a mass transit district comprising the same area as that involved in the present case without providing for the intervening action of the city.[9] The legislature must have felt, however, that many of the problems incident to the creation of a mass transit district would be focalized in the city itself and that the city should therefore have, in effect, the power to veto the existence of a district if the city felt that a mass transit district would be inimical to the city's interests.

There would be no practical way for the legislature, at the time of enacting legislation of the character under consideration, to know what impact it might have in the various metropolitan districts in the state. In such circumstances the most feasible method of providing for the necessary flexibility in carrying out the legislative policy is to delegate the decision to those whose interests are most seriously involved, and who are best equipped to decide whether the machinery designed by the legislature for the solution of the mass transit problem should be set in motion.

The legislative assembly's decision to vest in the affected cities the election to make operative Chapter 643 is, in itself, as much a legislative policy determination as the decision to deal with the mass transit problem in the first place, and were we to strike the delegation down we would be encroaching upon a legitimate legislative domain.

It is contended that the delegation to the city of

plaintiffs are attacking here. Of course, the people in the district still have a right of direct action through the initiative.

[9] Wasco County P.U.D. v. Kelly, 171 Or 691, 699-700, 137 P2d 295 (1943).

the power to create the district without permitting the inhabitants of the district outside the city to vote on the question of the creation of the district violates the principle announced in the so-called "one man, one vote" cases.[4]

The scope of the principle announced in those cases is not clear. A citizen does not have a constitutional right to vote on every question his government finds it necessary to resolve. As we have already observed, the legislative assembly could have created the district directly without calling for any action by the city. The district could be so created without the consent of the inhabitants within the district. The legislature could also make the creation of the district contingent upon the existence of certain facts or the occurrence of certain events not involving the decision-making process of the city council. Thus, it could provide that the district would come into existence if it was found that the transportation facilities serving the most populous city in the area were inadequate to meet the needs of the public. The legislature could delegate that fact-finding function to the city involved.

The delegation of the power to the city under ORS 267.105 undoubtedly contemplated that the city's decision would be made in part at least upon the basis of its appraisal of the existing mass transit problem. But it must be admitted that since the city's interests were involved, the delegation would make it possible

---

[4] The "one man, one vote" principle was first enunciated in Reynolds v. Sims, 377 US 533, 84 S Ct 1362, 12 L Ed2d 506 (1964). Plaintiffs point specifically to the elaboration of the principle in Sailors v. Board of Education, 387 US 105, 87 S Ct 1549, 18 L Ed 2d 650 (1967); Kramer v. Union Free School Dist., No. 15, 395 US 621, 89 S Ct 1886, 23 L Ed2d 583 (1969); and Hadley v. Junior College Dist., 397 US 50, 90 S Ct 791, 25 L Ed2d 45 (1970).

for the city to make the decision as to whether the district was to be created turn upon self-serving considerations. However, the most that the city can do under the statute is to say that a district is to exist. Once the district is created the city has no power to make any decisions on mass transit problems, the power to make such decisions being vested in a district board representing the whole district.

The statute commands the Governor to make the appointments of the members of the district board in a manner that will assure, as far as possible, the proportionate representation of the inhabitants in various parts of the district. However, it must be conceded that once the district is created certain burdens may, through the action of the district board, fall upon certain inhabitants of the district who had no voice in deciding whether these burdens should arise.

Leaving aside for the moment the question of the applicability of the "one man, one vote" cases, it would seem to us that if the legislative assembly could create the district by a simple declaration in the statute, the legislative assembly could also vest in another body, such as the city or its electorate, the power to create the district unless the preclusion of others in the district from participating in the decision-making process presented dangers of discrimination and inequality of such magnitude as to override the necessity for delegating the power to a part only of the voters in the area. It is not clear whether such a weighing process has any relevance in the application of the "one man, one vote" principle. If it were relevant, we would regard the danger of discrimination through the city's action as minimal and we would therefore consider the choice given to the city properly delegable.

However, even if the "one man, one vote" principle does not permit a consideration of the legislative necessity for a delegation of the power, we understand the principle as having no application where the power to make the decision implementing legislative policy is delegated to an independent entity rather than submitted to the electorate for its decision through the election process. This, we understand, is the import of *Sailors v. Board of Education*, 387 US 105, 87 S Ct 1549, 18 L Ed2d 650 (1967).

In the present case the power to decide whether a mass transit district was to be created was vested in the city council by statutory appointment. Applying the reasoning of the *Sailors* case, the inhabitants of the district had no constitutional right to participate in the decision made by the appointed agency.

Plaintiffs attack the action of defendant district in imposing the tax upon the further ground that the legislature could not constitutionally delegate to the district the power to impose a tax or the power to determine the kind of tax to be imposed.[9]

The legislature itself decided that the costs incident to the creation and operation of the district could be met by taxation. Thus, the major policy decision to impose a tax was made by the legislature and not by the district. The statute does, however, give the district the power to choose one or more of the methods of raising money enumerated in ORS 267.300. This power to select the method of raising revenue vests in the district board the power to allocate the burden of paying for the mass transit project among the inhabitants of the district as the board deems best. The question is

---

[9] The district's power to tax is found in ORS 267.300 (Section 23 of the Act).

whether this kind of delegation of power falls outside constitutional limits.

■ It is universally recognized that municipal corporations created to provide general governmental services have the power to impose taxes and to select the kind of tax that the governing body of the city considers the most appropriate. A district created under Chapter 643 is defined by the statute itself to be "a municipal corporation of this state, and a public body, corporate and public, exercising public power * * *."

Plaintiffs point out, however, that although the district is declared by statute to be a municipal corporation, it is a municipal corporation having a single function—the operation of a mass transit system, and therefore it is to be distinguished from municipal corporations exercising general governmental services. It could be added that the members of the governing body of the district are appointed, whereas the members of the governing body of municipal corporations exercising general governmental services are elected.

However, these differences between the two types of municipal corporations are significant only if they serve to demonstrate that inadequate constitutional protection is afforded the inhabitants of the district because the directors of the district hold an appointive office and are concerned only with a single aspect of the problems of government. We fail to see any significance in the latter distinction. The appointive character of the office of the district director presents a more troublesome question.

Where action is taken by the elected representatives of municipal government (e.g., a city council), the constituency has the opportunity to attempt to eliminate an alleged inequality by voting against their representative on the governing board. This remedy

is not available, of course, where the officials on the board are appointed. An aggrieved citizen must seek his relief indirectly by attempting to change the basic legislation or by attempting to influence the appointing authority to select someone more in sympathy with the complainant's point of view.

In considering the significance of these differences, it is to be borne in mind that even the appointed directors of the board are inhabitants of the district and are deemed (at least by the statute) to represent the other inhabitants in their respective areas.

It may be observed that a substantial part of the policy of the legislature is carried out by appointed administrative officers. The courts ordinarily have sustained the delegation of power to such officers even where the discretion conferred upon the officer is broad and its exercise capable of severely affecting the economic interests of a part only of the inhabitants of a community. In many cases the scope of the discretion and the adverse effect of its exercise upon the complainants is, in our opinion, as great as that which obtains in the present case in permitting the directors of the district to select the manner in which the revenue for mass transit purposes is to be raised. We have found no cases in which the power delegated involved the discretion to select the form of taxation. However, we do not think that the fact that the burden which falls upon the citizen as a result of the exercise of the delegated power is a tax burden rather than a burden in some other form should have any controlling effect.

■ We are of the opinion that the test for the validity of the delegation in this case, as in all other cases, should be whether the practical necessities of the efficient administration of legislative policy requiring

the delegation of discretion outweigh the danger of discriminate action.

■ In the financing of a mass transit operation the method of raising the revenue might well be dictated by circumstances peculiar to the particular district, by the conditions of the money market, by the amount of the expenditures contemplated, and a variety of other factors. The legislature would have no way of predicting what these circumstances might be in a particular district. The most efficient way of fitting the method of revenue raising to the needs of the district was that adopted by the legislature—delegating the power to make the choice to each district board.

Vesting this choice in the board, even though appointed rather than elected, does not, in our opinion, create a danger of arbitrary discrimination sufficient to require the vitiation of the legislature's method of carrying out its policy. We re-emphasize that the legislature has established the basic policy of imposing a financial burden of some kind on inhabitants in the district. Under our constitution, this decision was subject to a referendum. The manner in which a tax burden is to fall upon various segments of the community is not, in our opinion, a matter so vital that it must necessarily be established by the basic legislation.

Those affected by the board's exercise of discretion are not without weapons to attack it. A state-wide referendum was available at the time ORS 267.105 was passed. The statute provides for a referendum in the district on ordinances enacted by the board. The opportunity to urge a change in the basic legislation is open to all the inhabitants. Most citizens who feel aggrieved by the imposition of taxes have no better remedies.

The other points raised by plaintiffs in their petition for review have been adequately treated in the opinion filed by the Court of Appeals. The decree is affirmed.

McALLISTER and TONGUE, JJ., concur in the result.