Argued November 21, 1975, reversed and remanded with instructions
February 3, reconsideration denied February 25, petition for review
allowed March 31, 1976
See Oregon Reports 275 Or 545

MULTNOMAH COUNTY, *Appellant,*

*v.*

MITTLEMAN et al, *Respondents.*

(No. 394-755, CA 4836)

545 P2d 622

*Martin B. Vidgoff,* Deputy County Counsel, Portland, argued the cause for appellant. With him on the brief were George M. Joseph, County Counsel, and Charles S. Evans, Chief Deputy County Counsel, Portland.

*Lee Hansen,* Portland, argued the cause for respondents. With him on the brief were Brown, Hansen & Steenson, P.C., Portland.

Before Foley, Presiding Judge, and Fort and Lee, Judges.

FOLEY, P. J.

**FOLEY, P. J.**

Plaintiff county by ordinance effective July 1, 1971, imposed a tax on real property transfer documents tendered to the county for recording. The ordinance contained an emergency clause. The parties agree in the stipulated facts that at the time of the events involved here the powers of the initiative and referendum were to be exercised in the manner provided by state law. Both plaintiff and defendants agree that such an emergency enactment by the county is not subject to referendum under the Constitution of Oregon.[1]

Nevertheless, two administrative officers of the county, the Chief Civil Deputy District Attorney and the Director of Records and Elections, cooperated with a Portland attorney in assisting referendum petitioners to put on the November 7, 1972 election ballot a referendum purportedly submitting to the voters the document-taxing ordinance. At that election a decisive majority of those voting on the supposed referendum voted against approval of the ordinance. There is nothing in the record to indicate that the two administrative officers of the county were aware of the questionable validity of the referendum or that they acted otherwise than in good faith.

---

[1] Emergency legislation is not subject to referendum in Oregon. The Supreme Court stated in *Sears v. Multnomah County*, 49 Or 42, 45, 88 P 522 (1907):

"That an act may take effect under a general emergency clause, and yet be subject to the referendum, is clearly contrary to the intent of the amendment, and would produce disastrous results. * * *"

In *Horner's Market v. Tri-County Trans.*, 256 Or 124, 471 P2d 798 (1970), the court dealt with the taxing power of the legislatively sanctioned transportation district. There the court, continuing its recognition of the effect of the emergency clause, said:

"Although most ordinances of the district board would be subject to a district referendum, the board has the power to invoke an emergency clause when circumstances warrant. The effect of this clause is to make the ordinance immediately effective and preclude a referendum from preventing collection of the tax. The board inserted an emergency clause in the taxing ordinance which plaintiffs are attacking here. Of course, the people in the district still have a right of direct action through the initiative." 256 Or at 126-27, n 2.

Meanwhile, on July 31, 1972, about 13 months after the ordinance was passed and about three months before the referendum vote, the defendants tendered for recording a $16 million deed upon which the tax was calculated to be $17,600. The deed was recorded but the defendants refused to pay the tax and this action by the county to recover judgment for the $17,600 plus interest and costs resulted.

Defendants contend that the ordinance, while not initially subject to referendum because of the emergency clause, became subject thereto because of the conduct of the two county administrative officers in cooperating in putting it on the ballot and because plaintiff's Board of County Commissioners "* * * took no action * * * to prevent the referendum measure from being placed on the ballot." More specifically, they contend that the act of the county Director of Elections in certifying the referendum petitions constituted a waiver or implicit repeal by the county of the emergency clause.

Defendants also contend that the county is estopped to assert the emergency clause or the invalidity of the referendum, that counties are not permitted to declare an emergency in any act regulating taxation, and that no emergency, in fact, existed at the time the ordinance was adopted. Finally, the defendants claim that the ordinance interfered with a predominently state function and was thus unconstitutional.

The trial court considered the matter on the pleadings and stipulated facts. It held that the county, "* * * by its acquiescence to said referendum * * * waived any application of or effect * * *" of the emergency clause. The court made no findings on the other contentions of defendants.

We turn first to this determination by the trial court.

■ There is nothing in the record to indicate that the Board of County Commissioners, the county's legisla-

tive body, was directly or affirmatively involved in the events resulting in placement of the referendum on the ballot. Defendants contend only that the board did nothing to discourage or prevent the events. The finding of the court presupposes the authority of the administrative officers of the county, as distinguished from the legislative body of the county, the Board of County Commissioners, to waive the emergency clause. Such action by an administrative officer, whether relied on or not, cannot make an illegal determination by the administrative official legal. *Kays v. McCall,* 244 Or 361, 372, 418 P2d 511 (1966).

In *Kays* our Supreme Court affirmed a finding that a certification of signatures was defective where an administrative officer, the Director of Elections, misled sponsors of the initiative with respect to the number of signatures required for the certification. The certification was defective as a result of misinformation regarding the manner in which the requisite number of signatures should be computed. The following language of the court militates against a determination in this case that the action of the administrative agents constituted a waiver or implied repeal of the emergency clause:

"Defendants urge, in effect, that because they relied upon the declaration of the Director of Elections we should treat their petition as valid even though it fails to meet the statutory standard. * * *

"Stripped of its argumentative trappings, defendants' contention amounts to no more than a request that we give judicial sanction to an erroneous administrative determination simply because it was relied upon by them. This would indeed be a dangerous doctrine. It would, in effect, substitute administrative judgment for that of the judiciary. There is abundant authority recognizing that this should not be done.

"A summary of defendants' arguments makes it apparent that they are requesting this court to engage in a drastic and unprecedented renovation of the law, clearly beyond the limits of constitutional and legislative authority. Thus, as we see it, we are asked to disre-

gard the constitutional deadline for filing petitions * * * [and] to abdicate our judicial function by substituting for our judgment a clearly erroneous administrative pronouncement. This is asking too much." (Footnote omitted.) 244 Or at 372-73.

*See also Stuart v. Weldon,* 245 Or 203, 421 P2d 367 (1966).

■ In addition, our research discloses no authority suggesting that a legislative body can "waive" an emergency clause except through express repeal or some other *legislative action* which has the effect of an implied repeal.

■ Defendants contend that no action by the board was necessary to repeal the emergency clause and make the ordinance subject to referral, but that the action of the two administrative officers was sufficient. They cite *Roy v. Beveridge,* 125 Or 92, 266 P 230 (1928), as supporting that contention. In that case the Portland City Council adopted an ordinance referring to the people another ordinance which that body had enacted and declared to be an emergency measure. The issue before the Supreme Court was whether the *referring* ordinance itself was subject to referendum. The court held that the referring ordinance was an "administrative" rather than a "legislative" act by the council and that "administrative" acts are not subject to referral. The case did not hold that administrative officers of the county could repeal the emergency clause. To so extend the holding would empower administrative officers to refer any emergency enactment of the legislative branch. Neither *Roy v. Beveridge, supra,* nor any other case we have been able to find discussing the "legislative"-"administrative" distinction holds or even suggests that the actions involved herein could have constituted a repeal or waiver by administrative officers instead of the legislative body. Indeed, those cases do not discuss who may act to repeal or waive an enactment but, rather, what kinds of acts of legislative bodies may be referred. *See State ex rel Allen v. Martin,*

[ 242 ]

255 Or 401, 465 P2d 228 (1970); *Tillamook P.U.D. v. Coates,* 174 Or 476, 149 P2d 558 (1944); *Whitbeck v. Funk,* 140 Or 70, 12 P2d 1019 (1932); *Monahan v. Funk,* 137 Or 580, 3 P2d 778 (1931).

█ We turn now to defendants' alternative contentions. Defendants contend the county is estopped to deny the validity of the referendum and waiver of the emergency clause. They cite *Bankus v. City of Brookings,* 252 Or 257, 449 P2d 646 (1969), as supporting their position. There, a city recorder issued a permit which purported to waive a mandatory provision of an ordinance. The holding by our Supreme Court was that a purported waiver of a mandatory provision could not be the basis for a claim that the municipality is estopped. The court there stated:

"* * * Nor may a city be estopped by the acts of a city official who purports to waive the provisions of a mandatory ordinance or otherwise exceeds his authority. * * *" 252 Or at 260.

In addition, the elements of estoppel were not established in the record.[2] There is nothing in the record to suggest that defendants when tendering their deed for recording were relying on the pending referendum election. Nor is this a case where estoppel need not be expressly pleaded because the elements thereof can be inferred from the pleadings. *See Brandtjen & Kluge v. Biggs,* 205 Or 473, 288 P2d 1025, 51 ALR2d 1435 (1955).

█ Defendants also contend that no emergency, in fact, existed. In *Kadderly v. Portland,* 44 Or 118, 74 P 710, 75 P 222 (1903), the Supreme Court held that declarations of emergency are not reviewable. There the court said:

"* * * Most unquestionably, those who make the

---

[2] "To constitute an equitable estoppel, or estoppel by conduct, (1) there must be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon it. * * *" *Earls et ux v. Clarke,* 223 Or 527, 530-31, 355 P2d 213 (1960).

laws are required, in the process of their enactment, to pass upon all questions of expediency and necessity connected therewith, and must therefore determine whether a given law is necessary for the preservation of the public peace, health, and safety.

"It has always been the rule, and is now everywhere understood, that the judgment of the legislative and executive departments as to the wisdom, expediency, or necessity of any given law is conclusive on the courts, and cannot be reviewed or called in question by them. * * *" 44 Or at 148.

*See also Greenberg v. Lee,* 196 Or 157, 248 P2d 324, 35 ALR2d 567 (1952); *Joplin v. Ten Brook,* 124 Or 36, 263 P 893 (1928); *Bennett Trust Co. v. Sengstacken,* 58 Or 333, 113 P 863 (1911). Defendants correctly argue that if the charters of the respective cities require their legislative bodies to offer reasons for declaring an emergency, then the court may inquire into the existence or adequacy of a declared emergency. Here, however, the Board of County Commissioners, like the state legislature, is not subject to such requirement.

■ Finally, we come to defendants' contention that the ordinance was unconstitutional as an unlawful interference with a state function. It is noted that the ordinance did not make the recording of instruments contingent upon payment of the tax; rather, it expressly provided that failure to pay the tax would not result in nonrecording. Also, as the parties stipulated, the ordinance was a revenue measure, not enacted for the purpose of regulating recording. Under applicable Oregon Law, we find no pre-emption of the field by state law, nor interference with any state law such as to require invalidation of the ordinance. *See Terry v. City of Portland,* 204 Or 478, 269 P2d 544 (1954), *appeal dismissed,* 348 US 979 (1955); and *City of Beaverton v. Harris,* 3 Or App 541, 474 P2d 771 (1970).

The dissent apparently does not recognize the acknowledgment by both parties to this litigation that an emergency enactment by the county is not subject to referendum under the Oregon Constitution. As

[ 244 ]

pointed out in footnote 1, the Supreme Court of Oregon has early (1907) and recently (1970) recognized the principle.

The implication in the dissent that the people are powerless to annul a taxing ordinance because an emergency clause has been added is misleading. As pointed out in footnote 1, the people " 'have a right of direct action through the initiative.' "

Reversed and remanded for entry of judgment for plaintiff.

**LEE, J.,** dissenting.

One of the defendants' contentions was that plaintiff's taxing ordinance violates Art IX, § 1a of the Oregon Constitution which in pertinent part provides:

"* * * The Legislative Assembly *shall not declare an emergency* to any act regulating taxation or exemption." (Emphasis supplied.)

I dissent because the majority has not met this constitutional question which I feel is dispositive of this case.

On November 8, 1960 the people enacted, by initiative, Art VI, § 10 of the Oregon Constitution which provides in part that:

"* * * The initiative and *referendum powers* reserved to the people by this Constitution hereby *are further reserved to the legal voters of every county relative to* the adoption, amendment, revision or repeal of a county charter and to *legislation passed by counties which have adopted such a charter.*" (Emphasis supplied.)

This subsequent constitutional enactment (Art VI, § 10) gives "the legal voters of every county" the express right of referendum.

One of the powers "reserved to the people" is the prohibition contained in Art IX, § 1a of the Oregon Constitution against attaching an emergency clause "to any act regulating taxation." Consequently, it was unconstitutional for plaintiff to attach the emergency

[ 245 ]

clause to the ordinance imposing a recording tax on deeds. Therefore, the ordinance was subject to referendum vote of the people.

Plaintiff maintained that this constitutional restriction is limited to the State legislature and relied on *Garbade and Boynton v. City of Portland,* 188 Or 158, 164, 214 P2d 1000 (1950), in which it is stated that Art IX, § 1a:

"* * * refers only to the state legislative assembly and has no relevancy in respect to municipal legislative bodies. * * *"

However, *Garbade* is inapposite for two reasons. *First,* the holding in that case concerned a *municipal* legislative body (city council), *not* a *county,* as in the instant case. *Second,* the subsequent enactment of Art VI, § 10 of the Oregon Constitution affirmatively gave county voters unfettered right of referendum.

Plaintiff also relies on *Horner's Market v. Tri-County Trans.,* 2 Or App 288, 309, 467 P2d 671, Sup Ct *review denied,* 256 Or 124, 471 P2d 798 (1970), in which we cited *Garbade* and held that Art IX, § 1a did not apply to a mass transit district. *Horner's Market,* however, can be distinquished because the holding in that case did not concern a county. A mass transit district is a municipal corporation (ORS 267.200). As such it falls within the holding of *Garbade.* To extend *Horner's Market* to cover counties would contravene both constitutional provisions (Art IX, § 1a and Art VI, § 10) above set forth.

In *Monaghan v. School District No. 1,* 211 Or 360, 366-67, 315 P2d 797 (1957), our supreme court said:

"In construing the organic law, the presumption and legal intendment are that every word, clause and sentence therein have been inserted for some useful purpose. *School District 1, Multnomah County v. Bingham* (1955), 204 Or 601, 611, 283 P2d 670, 284 P2d 779."

## Our Supreme Court further stated in *Monaghan:*

"* * * Where one meaning is plainly declared in the instrument, the courts are not at liberty to search

elsewhere for possible or even probable meanings. *Schubel v. Olcott,* 60 Or 503, 512, 120 P 375; 1 Cooley's Constitutional Limitations (8th ed) p 124; 16 CJS 81, Constitutional Law § 19." 211 Or at 367.

The language of our constitution is clear. There is no room for construction. *See State Ex Rel. Bell v. Pierce Et Al.,* 118 Or 533, 540, 247 P 812 (1926).

I cannot assent to the result reached by the majority, that the voters of plaintiff county are without power to refer a taxing ordinance because an emergency clause had been added.

Accordingly, I respectfully dissent.