## MULTNOMAH COUNTY, *Respondent,*
*v.*
## MITTLEMAN et al, *Petitioners.*

552 P2d 242

*Lee A. Hansen,* Portland, argued the cause for petitioners. With him on the brief were Brown, Hansen & Steenson, P.C., Portland.

*Martin B. Vidgoff,* Deputy County Counsel, Portland, argued the cause for respondent. With him on the briefs were George M. Joseph, County Counsel for Multnomah County, and Charles S. Evans, Chief Deputy County Counsel, Portland.

*Gile R. Downes,* Portland, filed a brief Amicus Curiae for the Portland Board of Realtors. With him on the brief were Theodore B. Jensen and Jensen, DeFrancq, Holmes & Schulte, Portland.

TONGUE, J.

(For Court of Appeals opinion, see 24 Or App 237)

## TONGUE, J.

This is an action by Multnomah County to recover $17,600 in unpaid taxes imposed by a county ordinance on all documents transferring real property and tendered for recording in the public records of the county. That ordinance included an "emergency clause." Despite that emergency clause, a referendum petition was filed and the ordinance was defeated by the voters at the next general election.

The case was tried to the trial court, sitting without a jury. That court entered a judgment in favor of defendants upon the ground that the County, by its acquiescence to that referendum, had waived application of the emergency clause of the ordinance so as to prevent the referendum.

The County appealed to the Court of Appeals, which reversed that holding by the trial court and remanded the case for entry of judgment in favor of the County, thereby holding that the referendum election was a nullity. 76 Adv Sh 237, 24 Or App 237, 545 P2d 622 (1976). We granted defendants' petition for review because of our concern whether the Court of Appeals properly rejected defendants' contention that the voters of "home-rule" counties have a right under the Oregon Constitution to a referendum of all ordinances "regulating taxation."[1]

In opposing defendants' petition for review and in support of that holding by the Court of Appeals plaintiff contends: (1) that this court has "twice decided that Article IX, § 1a of the Oregon Constitution, prohibiting declarations of emergency in tax legislation by the Legislative Assembly, applies *only* to the state legislature" (citing *Garbade and Boynton v. City of Portland,*

---

[1]The Court of Appeals held that: (Lee, J., dissented)

"[A]n emergency enactment by the county is not subject to referendum under the Oregon Constitution," citing *Sears v. Multnomah County,* 49 Or 42, 45, 88 P 522 (1907), and *Horner's Market v. Tri-County Trans.,* 256 Or 124, 126-27, 471 P2d 798 (1970).

188 Or 158, 214 P2d 1000 (1950), and *Horner's Market v. Tri-County Trans.,* 256 Or 124, 471 P2d 798 (1970)), and (2) that the language and history of that section "manifestly demonstrate" that those decisions were correct. We shall discuss these contentions in reverse order.[2]

1. *Constitutional provisions for referendum and their history.*

In 1958 the Oregon Constitution was amended to include Article VI, § 10, providing for "home rule" for counties. That section includes the following provision:

> "The initiative and referendum powers reserved to the people by this Constitution hereby are further reserved to the legal voters of every county relative to the adoption, amendment, revision or repeal of a county charter and to legislation passed by counties which have adopted such a charter."

The question presented by this case is: What "referendum powers" were "reserved to the people by this Constitution" at the time of the adoption of Article VI, § 10? More specifically, the issue to be decided in this case is whether the "referendum powers reserved to the people by this Constitution" and "further reserved" to the voters of home-rule counties by Article VI, § 10, included the power of referendum of "legislation passed by [home-rule] counties" imposing new taxes. Stated otherwise, the issue is whether a home-rule county may declare an "emergency" in an ordinance imposing new taxes and thereby prevent a referendum of such an ordinance.

The referendum provisions of the Oregon Constitution were first adopted in 1902 as Article IV, § 1, which provided in part:

> "The legislative authority of the state shall be vested in the Legislative Assembly, * * * but *the people reserve to themselves* power to propose laws and amendments to

[2]Because of the basis for our disposition of this case we find it unnecessary to consider the effect of the County's "acquiescence" in the referendum.

the Constitution and to enact or reject the same at the polls, independent of the Legislative Assembly, and also reserve *power at their own option to approve or reject at the polls any Act of the Legislative Assembly.* The first power reserved * * * is the initiative * * * The second power is *the referendum,* and it *may be ordered (except as to laws necessary for the immediate preservation of the public peace, health, or safety),* either by a petition signed by five percent of the legal voters, or by the Legislative Assembly, as other bills are enacted. *Referendum petitions shall be filed with the Secretary of State not more than 90 days after the final adjournment of the session of the Legislative Assembly* which passed the bill on which the referendum is demanded.[3] (Emphasis added)

That section must be read with reference to Article IV, § 28, as included in the original Oregon Constitution, which provides that:

"No act shall take effect, until ninety days from the end of the session at which the same shall have been passed, except in case of emergency; which emergency shall be declared in the preamble, or in the body of the law."

Thus, when these constitutional provisions were read together, it was apparent that the Oregon legislature could prevent a referendum to vote of the people of any legislation by simply declaring an "emergency" and attaching an "emergency clause" to the legislation. Indeed, during the next year following the adoption of the referendum provision it was held by this court that the right of the Oregon legislature to declare an emergency was absolutely privileged and was not subject to review by the courts. *Kadderly v. Portland,* 44 Or 118, 148-49, 74 P 710, 75 P 222 (1903).

[3]This provision was in effect at the time of the County Home Rule Amendment of 1958. In 1968 Article IV, § 1 was amended to include the following:

"(3)(a) The people reserve to themselves the referendum power, which is to approve or reject at an election any Act, or part thereof, of the Legislative Assembly that does not become effective earlier than 90 days after the end of the session at which the Act is passed.

"(b) * * * A referendum petition shall be filed not more than 90 days after the end of the session at which the Act is passed."

Upon the publication of the decision "it was declared that the court had 'devitalized' the referendum" and that "Most bills * * * will contain emergency clauses, whether emergency exists or not, since they can thus escape referendum."[4]

In 1910 an initiative measure was adopted that amended the Oregon Constitution by the addition of Article IX, § 1a, providing that:

"[N]o bill regulating taxation * * * shall become law until approved by the people of the State at a regular general election * * *."

According to the Oregon Voters Pamphlet for 1910, the argument in support of this and two other measures included the contention that they were "People's Power" amendments, designed "to give the people * * * direct power to manage their own pocketbooks."[5]

In 1912, however, that amendment was repealed and was replaced by the present provisions of Article IX, § 1a, which includes the provision that:

"The Legislative Assembly shall not declare an emergency in any act regulating taxation or exemption."

That amendment to the Oregon Constitution was proposed by the legislature and submitted by it to the voters for approval. According to the Oregon Voters Pamphlet for 1912, the argument in support of that proposal was as follows:

"The third constitutional amendment proposed (ballot number 308) is for the practical repeal of the so-called 'single tax' amendment adopted in 1910. * * *

"The proposed amendment also prohibits the declaring of an emergency in any act regulating taxation or exemption, *thus fully insuring the right of referendum on any tax law enacted by the Legislature.* This provision is inserted in lieu of the most unreasonable and unwarranted feature of the 1910 amendment which practically

---

[4]Barnett, The Operation of the Initiative, Referendum and Recall in Oregon 134-35 (1915).

[5]1910 Oregon Voters Pamphlet, p 25.

deprives the Legislature of power to legislate in matters of taxation."[6] (Emphasis added)

From the foregoing it appears that the primary purpose and effect of the adoption in 1912 of Article IX, § 1a, was to make all tax measures subject to referendum and that this was accomplished by forbidding the Oregon legislature from declaring an emergency in the enactment of such legislation.[7] The result, in our judgment, is the same as if the Oregon Constitution included a provision expressly stating that all tax measures enacted by the legislature are subject to referendum.

For the same reasons, we also conclude that at the time of the subsequent CountyHome Rule Amendment in 1958, the "referendum powers reserved to the people" by the Oregon Constitution included then, and still include, the power of referendum of all tax measures enacted by the Oregon legislature and that this referendum power could not then, and cannot now, be defeated by the declaration by the Oregon legislature of an emergency in the enactment of tax legislation.

It follows, in our best judgment, that by the adoption in 1958 of Article VI, § 10 (the County Home Rule Amendment), the same "referendum powers" are "reserved to the legal voters of every [home-rule] county relative to * * * legislation passed by [such] counties"; that the purpose and effect of Article VI, § 10, was to reserve to county voters with respect to county tax legislation the same "referendum powers" previously reserved to state voters with respect to state tax legislation; that this includes county legislation imposing new taxes; and that a home-rule county may not defeat the exercise of such "referendum pow-

---

[6] 1912 Oregon Voters Pamphlet, p 23.

As also stated in Barnett, *supra* n. 4 at 141:

"The exemption of tax-measures from emergency legislation by a constituted [sic] amendment in 1912 was merely a substitute for the obligatory referendum on such measures."

[7] See also *State ex rel Smith v. Kozer,* 121 Or 459, 255 P 900 (1927).

ers" by the declaration of an emergency in the enactment of such legislation. In other words, Article IX, § 1a, as we view it, is not merely a restriction upon the power of the Oregon legislature, but is a part of the "referendum powers" reserved to the voters of Oregon.

The County contends that "the language of Article IX, Section 1a is unambiguous" and "prohibits only the 'Legislative Assembly' [i.e. the state legislature] from declaring emergencies in legislation regulating taxation." The County asserts that the history of Article IX, § 1a, and of other provisions "conclusively shows that the prohibition of emergency tax legislation was intended to apply only to the state legislature." The County then reviews much of the same history as summarized above in support of that contention, including, in particular, the 1910 and 1912 Amendments of Article IX, § 1a. The County then cites Etter, County Home Rule in Oregon, 46 Or L Rev 251, 253 (1967); Kehrli and Mattis, The Authority of Home Rule Cities and Counties in Oregon to Levy Sales and Income Taxes—An Affirmative View, 5 Will L J 183, 188-91 (1969); and the First Biennial Report of the Board of State Tax Commissioners (1911), among other authorities, in support of the contention that:

> "The 1912 amendment substituted a more moderate limitation on the legislature's taxing power in place of the absolute limit imposed by the original section. It may be inferred that this more moderate limitation was intended to apply to the same legislative body which was the object of the original limitation the voters had adopted only two years earlier. That inference is convincingly supported by the fact that the language imposing the new limitation refers specifically and exclusively to that legislative body."

In our view, these contentions miss the point. The point, as we see it, is not that Article IX, § 1a was intended in 1912 to apply to the Oregon legislature. Instead, the point is that in 1958, when the County Home Rule Amendment was adopted as Article VI, § 10, the same "referendum powers reserved to the

people by this Constitution" relative to legislation passed by the state legislature were "further reserved to the legal voters of every [home-rule] county relative to * * * legislation passed by [such] counties." For reasons previously stated, we conclude that these "referendum powers" included, as an integral part, the power of referendum of legislation passed by counties imposing new taxes. We see nothing inconsistent with this conclusion by reason of the fact that Article IX, § 1a, was obviously enacted for the purpose of reserving to state voters the referendum power with respect to tax legislation adopted by the state "Legislative Assembly."

We also find nothing in the authorities cited by the plaintiff inconsistent with this conclusion. Indeed, Orval Etter, in his article entitled "County Home Rule in Oregon," 46 Or L Rev 251 (1967), in discussing the reservation of referendum powers in Article VI, § 10, as adopted in 1958, states (at 282) that:

> "The subsequent reservation [in Article VI, section 10] has been made, however, quite *as comprehensively in scope as might be imagined,* and the county home-rule enabling act implements the reservation."[8]

---

[8]That enabling act, ORS 203.780, contains nothing indicating an understanding by the Oregon legislature that the referendum powers reserved to county voters by Article VI, § 10, were to be limited in any way. ORS 203.780(5) provides:

> "It is intended to make the procedure in the county legislation, as nearly as practicable, the same as the initiative and referendum procedure for measures relating to the people of the state at large * * *."

That statute, by applying state referendum procedures to county referendums, is consistent with the conclusion that Article VI, § 10, was intended to reserve the same referendum powers to the county voters respecting county legislation, including tax measures, as previously reserved to state voters respecting state legislation, including tax measures.

The article by Kehrli and Mattis entitled "The Authority of Home Rule Cities and Counties in Oregon to Levy Sales and Income Taxes—An Affirmative View, 5 Will L J 183 (1969), does not discuss specifically the

The primary source of the "referendum powers reserved to the people" by the Oregon Constitution is in Article IV, § 1, adopted in 1902, which also, by its express terms, was a reservation to the people of the referendum power to "approve or reject at the polls *any Act of the Legislative Assembly.*"[9] As previously noted, County contends that the "referendum powers" reserved by Article VI, § 10, to the voters of home-rule counties do not extend to county tax legislation to which an emergency clause has been attached because Article IX, § 1a, is limited by its terms to a prohibition against the state "Legislative Assembly" from declaring an emergency in any tax legislation. It would follow, by application of that reasoning, that the "referendum powers" reserved by Article VI, § 10, to the voters of home-rule counties do not extend to any county legislation, but only to acts of the state "Legislative Assembly," because Article IV, § 1, is limited by its terms to legislation enacted by the state "Legislative Assembly." Such a result would strip Article VI, § 10, of any reservation of referendum power to the voters of home-rule counties with respect to any county legislation. They already had the referendum power with respect to state legislation under Article IV, § 1.

As stated in our earlier decision in *Sears v. Multnomah County,* 49 Or 42, 88 P 522 (1907), also involving the referendum powers of the people of Oregon

---

scope of the referendum powers reserved to county voters by Article IV, § 1a, but concludes (at 202) with the general statement that:

   "* * * A liberal construction of home rule powers by legislative, judicial and legal authorities contributes to the strength of local democracy in Oregon."

The First Biennial Report of the Board of State Tax Commissioners (1911), was prepared prior to the enactment in 1958 of Article VI, § 10, of the Oregon Constitution and thus necessarily does not discuss the operation or effect of that provision.

   [9] As stated in note 3, *supra,* Article IV, § 1, was amended in 1968 to include provisions as set forth in that note, also referring to "any Act, or part thereof, of the Legislative Assembly."

(although under different facts), to so hold would "render futile" the referendum power reserved to the voters of home-rule counties by Article VI, § 10, and would "make the amendment idle and nugatory."

On the contrary, we believe that in reserving to voters of home-rule counties the "referendum powers reserved to the people by this Constitution" the purpose and effect of Article VI, § 10, was to reserve to the voters of home-rule counties the same "referendum powers" with respect to county legislation that had been previously reserved to the people generally by Article IV, § 1, with respect to legislation enacted by the state legislature—a referendum power that had been specifically reserved by Article IX, § 1a, with respect to all tax legislation enacted by the state legislature. Indeed, the principal vitality of the referendum power is with reference to tax legislation, to which no emergency clause may be attached.

2. *The prior decisions of this court.*

As previously noted, County contends that this court has "twice decided that Article IX, Section 1a of the Oregon Constitution, prohibiting declarations of emergency in tax legislation by the Legislative Assembly, applies *only* to the state legislature," citing *Garbade and Boynton v. City of Portland,* 188 Or 158, 164, 214 P2d 1000 (1950), and *Horner's Market v. Tri-County Trans.,* 256 Or 124, 126-27, 471 P2d 798 (1970).

In *Garbade* plaintiffs sought a declaratory judgment that 22 ordinances, which amended an earlier ordinance by increasing existing license fees on certain businesses and occupations, were unconstitutional and void.[10] In the appeal to this court it was not

---

[10] Another ordinance had sought to impose a general profits tax. A referendum petition was filed against the latter ordinance. As a result, the City passed yet another ordinance providing that the 22 ordinances would not become operative if the profits tax ordinance "has become effective and operative" on or before July 1, 1949. Nevertheless, enough signatures were

contended that the 22 ordinances were invalid because of a denial of referendum by the declaration of emergency clauses. None of those 22 ordinances contained an emergency clause. It was contended, however, that the 22 ordinances were invalid because they "contained" a subject "different" from the original ordinance that they amended. As an incident to that contention plaintiffs argued that the original ordinance was not a tax measure because it "carried" an emergency clause that "it could not and would not have carried * * * under the prohibition of Article IX, section 1a of the State Constitution" if it had indeed been a tax measure.

In that context this court said in *Garbade* (at 164):

"That part of article IX, § 1a of the state constitution, on which plaintiffs rely, provides: 'The legislative assembly shall not declare an emergency in any act regulating taxation or exemption.' This section refers only to the state legislative assembly and has no relevancy in respect to municipal legislative bodies."

It is true that Article IX, § 1a, refers only to the state legislative assembly. For reasons previously stated, however, it is not true that Article IX, § 1a, when considered together with Article IV, § 1, Article IV, § 28, and Article VI, § 10, has "no relevancy to municipal legislative bodies," at least with respect to home-rule counties and to the "referendum powers" reserved to the voters of such counties. To the extent

obtained to refer the profits tax ordinance, thereby preventing it from becoming operative on or before July 1, 1949. Thereafter, the City sought to enforce the 22 ordinances.

Plaintiffs filed suit challenging the validity of the 22 ordinances and appealed from an adverse decision by the trial court. Plaintiffs' assignments of error were that: (1) the 22 ordinances were invalid because "they contain another *subject* different from and not germane to the subject of the original ordinance which they are stated by their titles to amend"; (2) "The practical denial of the opportunity for the people to involve the referendum against the 22 ordinances rendered the same unconstitutional and void"; (3) the ordinances violated the 6 per cent limitation imposed by Article XI, Section 11, of the Oregon Constitution, and (4) the ordinances were "discriminatory" in violation of provisions of the Constitution of Oregon and the United States.

that our decision in *Garbade* holds otherwise, it is overruled.

We recognize that at the time of *Garbade* similar referendum powers were reserved to the voters of cities, under former Article IV, § 1a, of the Oregon Constitution, since replaced by Article IV, § 1(5). Those provisions, however, are not before us in this case.[11]

We also recognize that in *Horner's Market v. Tri-County Trans., supra,* we said (in a footnote at pp 126-27) that:

> "Although most ordinances of the district board would be subject to a district referendum, the board has the power to invoke an emergency clause when circumstances warrant. The effect of this clause is to make the ordinance immediately effective and preclude a referendum from preventing collection of the tax. The board inserted an emergency clause in the taxing ordinance which plaintiffs are attacking here. Of course, the people in the district still have a right of direct action through the initiative."

Again, the contention by the plaintiff to this court in that case was that because of Article IX, § 1a, Tri-Met had no power to attach an emergency clause to a tax ordinance. In support of that contention plaintiff sought to distinguish *Garbade* on the ground that it involved a tax ordinance passed by an elected city council of a home-rule city and that Oregon Laws 1969, ch 643, did not confer such authority upon Tri-Met. It was in that context that this court made the foregoing statement. As in the case of *Garbade,* however, that statement in *Horner's Market* is over-

---

[11]Cf. *Roy v. Beveridge,* 125 Or 92, 266 P 230 (1928), discussing former Article IV, § 1a, of the Oregon Constitution and stating (at 96) that:

"By reference to Section 1 of Article IV, we find that the people have the power to invoke the referendum on all laws passed by the legislature except those necessary for the immediate preservation of the public peace, health or safety.

"By Section 1a of Article IV, we find that *these same powers are granted to the voters of municipalities, neither greater nor less. * * ** (Emphasis added)

ruled to the extent that it is inconsistent with our decision in this case.

We note that in County's brief in opposition to the petition for review in this case prior decisions of this court are cited in support of the well-established rule that the Oregon Constitution "is to be read as a whole, that effect is to be given to all of its provisions, and that amendments or new provisions are to be construed together with them." This is exactly what we have endeavored to do in construing Article VI, § 10, and Article IX, § 1a, together with Article IV, §§ 1 and 28, as set forth above.[12]

We would also note that in *State ex rel. v. Hoss,* 143 Or 383, 22 P2d 883 (1933), we adopted (at 389), the following rule, which we believe to be pertinent in the construction of these constitutional provisions relating to the "referendum powers" of the people:

> "Election laws should be liberally construed to the end that the people may have the opportunity of expressing opinion concerning matters of vital interest to their welfare. Expression, not suppression, tends towards good government. The great constitutional privilege of a citizen to exercise his sovereign right to vote should not be taken away by narrow or technical construction. If the statute is of doubtful construction, we think the doubt should be resolved in favor of free expression of opinion [citing cases]."

It follows, for all of these reasons, that the ordinance adopted by Multnomah County, having been referred to the voters of the County and rejected by them, could not be enforced by the County against defendants, as directed by the decision of the Court of Appeals. That decision must therefore be reversed and this case be remanded to the Court of Appeals with instructions that it be then remanded to the trial court for entry of judgment in favor of defendants.

Reversed.

---

[12]See also *Cameron v. Stevens,* 121 Or 538, 542, 256 P 395 (1927).