Argued April 23, reversed and remanded June 11,
reconsideration denied August 14, petition for
review denied October 16, 1979

MEDFORD FIREFIGHTERS ASSOCIATION,
LOCAL 1431, IAFF, *Appellant,*

*v.*

THE CITY OF MEDFORD, et al, *Respondents.*
(No. 78-2099-E-3, CA 12327)

595 P2d 1268

Gary K. Jensen, Eugene, argued the cause and filed the brief for appellant.

Eugene F. Hart, Jr., City Attorney, Medford, argued the cause and filed the brief for respondents.

Al J. Laue, Assistant Attorney General, Salem, argued the cause amicus curiae on behalf of Employment Relations Board. With him on the brief were James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, and Patti L. Hunter, Certified Law Student, Salem.

Before Schwab, Chief Judge, and Tanzer and Richardson, Judges.

TANZER, J.

**TANZER, J.**

The issue in this mandamus proceeding is the constitutionality of the compulsory arbitration provisions of the public employe collective bargaining statutes, ORS 243.650 to 243.762.

Petitioner and respondent, the City of Medford, engaged in negotiations and mediation during 1977 and 1978, but did not succeed in reaching a new employment agreement. The Employment Relations Board (ERB) appointed an arbitrator who held a hearing in June, 1978. Pursuant to ORS 243.742, 243.746 and 243.752, the arbitrator prepared an agreement and submitted it to the parties for their signatures. The City refused to sign the agreement, and the Firefighters brought this mandamus proceeding seeking a writ commanding the City to sign the agreement. The City demurred to the alternative writ of mandamus on the grounds that ORS 243.752,[1] which provides that the arbitration decision is binding on the parties, is unconstitutional because it 2 violates the home rule provisions of the Oregon Constitution[2] and because it delegates legislative authority without

---

[1] The specific statute challenged in this case is ORS 243.752, which provides in pertinent part:

"A majority decision of the arbitration panel, under ORS 243.706 and 243.726, 243.736 to 243.746, if supported by competent, material and substantial evidence on the whole record, based upon the factors set forth in subsection (4) of ORS 243.746 shall be final and binding upon the parties, and may be enforced at the instance of either party or the board in the circuit court for the county in which the dispute arose. * * *"

[2] Or Const, Art IV, § 1(5):

"The initiative and referendum powers reserved to the people by subsections (2) and (3) of this section are further reserved to the qualified voters of each municipality and district as to all local, special and municipal legislation of every character in or for their municipality or district. The manner of exercising those powers shall be provided by general laws, but cities may provide the manner of exercising those powers as to their municipal legislation. In a city, not more than 15 percent of the qualified voters may be required to propose legislation by the initiative, and not more than 10 percent of the qualified voters may be required to order a referendum on legislation."

adequate standards or safeguards.[3] The trial court sustained the demurrer on home rule grounds. We presume the constitutionality of the statute and look to each of the City's arguments to the contrary.

## Home Rule

We first consider the City's contention that ORS 243.752 violates the constitutional protections of its home home rule powers. The leading case on this subject is *LaGrande/Astoria v. PERB*, 281 Or 137, 576 P2d 1204, aff'd on rehrg, 284 Or 173, 586 P2d 765 (1978).[4] There, the Supreme Court held in essence that the home rule powers grant preeminence to local governments in matters of political organization, and that the legislature remained preeminent in matters of substantive law. Accordingly, it sustained the constitutionality of a statute requiring municipal firemen and police officers to be brought within the state Public Employes Retirement System unless the municipal employer provided them with equal or better retirement benefits. The Court held that

"* * * a general law addressed primarily to substantive social, economic, or other regulatory objectives of the state prevails over contrary policies

Or Const, Art XI, § 2:

"* * * The Legislative Assembly shall not enact, amend or repeat any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon * * *."

[3] Or Const, Art IV, § 1(1):

"The legislative power of the state, except for the initiative and referendum powers reserved to the people, is vested in a Legislative Assembly, consisting of a Senate and a House of Representatives."

[4] At the time of the trial court's decision in this case, the Supreme Court had granted rehearing in *LaGrande/Astoria*. The trial court reasoned that the Supreme Court was dissatisfied with the initial majority opinion in that case and therefore elected to apply the law as it existed before the *LaGrande/Astoria* decision. The mistaken expectation that the Supreme Court would reverse itself is the only express basis for the trial court's decision.

preferred by some local governments if it is clearly intended to do so, unless the law is shown to be irreconcilable with the local community's freedom to choose its own political form. * * *"

281 Or at 156. Under this principle, ORS 243.752 does not violate the constitutional home rule provisions.

The statute in question is part of a comprehensive statutory scheme regulating the collective bargaining rights and duties of public employers and employes, ORS 243.650 to 243.782. Of particular significance here is ORS 243.736, which prohibits strikes by firemen, policemen and certain guards. ORS 243.742 provides for compulsory arbitration where strikes are prohibited. ORS 243.746 establishes procedures for selection of an arbitrator and for the arbitration itself. ORS 243.752 provides that the arbitrator's decision, "if supported by competent, material and substantial evidence on the whole record, based upon the factors set forth in subsection (4) of ORS 243.746[5] shall be final and binding upon the parties" and may be judicially enforced. ORS 243.762 allows public employers and the public employe representative to agree on a substantially equivalent compulsory arbitration procedure instead of the one prescribed by statute.

■ The compulsory arbitration provisions at issue here have the same constitutional status as the statutes sustained in *La Grande/Astoria v. PERB.* The objective of the statutes is the promotion of harmonious relations between labor and management in the public sector by imposition of a collective bargaining system resembling that which regulates much of the private sector in some respects, but not in others. One of the differences, binding arbitration, is essentially a quid pro quo for the prohibition of strikes by firemen. Together, these statutes protect the public from interruption of essential health and safety services while

---

[5] *See* note 9.

[523]

recognizing the employes' right to engage in meaningful collective bargaining. The protection of these services and rights by requiring arbitration in lieu of strikes is a substantive state policy which the legislature clearly intended to prevail over conflicting local preferences. *Cf.* ORS 243.652. Like the statutes sustained in *LaGrande/Astoria*, the binding arbitration statutes may impose additional financial burdens on local governments, but they do not interfere with the City's freedom to choose its own political form or its mode of governmental organization. Therefore, the challenged statutes do not violate the constitutional home rule provisions.

### Legislative Delegation

■ The City's second contention is that the compulsory arbitration statutes create an unconstitutional delegation of legislative power to the arbitrator.[6] Much of the City's argument is addressed to the wisdom rather than the constitutional permissibility of the delegation of authority to an arbitrator to formulate a binding public employment agreement.[7] The wisdom of the statutory policy is a matter for the legislature, not the courts. The City's contention regarding interference with local prerogatives is answered by the foregoing discussion of constitutional home rule.

The City further contends that the compulsory and binding arbitration statutes are unconstitutional because they do not provide adequate safeguards to

---

[6] The trend in other jurisdictions is to find such delegations to be valid. *See* Anno., *Statutory Arbitration for Public Employees*, 68 ALR3d 885, 892, 896-900.

[7] The City summarizes these contentions as:

"The compulsory arbitration provisions of the collective bargaining law delegate broad legislative and political powers to *politically unaccountable* ad hoc arbitrators.

"Compulsory arbitration undermines collective bargaining, usurps legislative perogatives [*sic*] and does not prevent strikes.

"There are constitutional alternatives to compulsory arbitration." (Emphasis supplied.)

prevent an arbitrary exercise of delegated authority and because they delegate legislative power to a private person.

General standards for the constitutionality of a delegation of legislative authority are found in *Horner's Market v. Tri-County Trans.*, 256 Or 124, 132-33, 471 P2d 798 (1970), (other parts of which were overruled in *Multnomah County v. Mittleman*, 275 Or 545, 557, 552 P2d 242 (1976)), and *Warren v. Marion County et al*, 222 Or 307, 313-15, 353 P2d 257 (1960). In *Horner's Market, the Court stated:*

> "* * * [T]he test for the validity of the delegation in this case, as in all other cases, should be whether the practical necessities of the efficient administration of legislative policy requiring the delegation of discretion outweigh the danger of discriminate action." 256 Or at 132-33.

In *Warren*, the Court stressed that the fundamental inquiry in delegation cases is "whether the procedure established for the exercise of the power furnishes adequate *safeguards* to those who are affected by the administrative action." (Original emphasis.) 222 Or at 314.

In this case, the arbitrator's function is an essential component of the statutory scheme outlined above.[8] Discriminatory action is unlikely because the arbitrator may have no personal interest in the outcome

---

[8] ORS 243.742(1) sets out the legislative policy underlying the compulsory arbitration provisions:

> "It is the public policy of the State of Oregon that where the right of employes to strike is by law prohibited, it is requisite to the high morale of such employes and the efficient operation of such departments to afford an alternate, expeditious, effective and binding procedure for the resolution of labor disputes and to that end the provisions of ORS 240.060, 240.065, 240.080, 240.123, 243.650 to 243.782, 292.055, 341.290, 662.705, 662.715 and 662.785, providing for compulsory arbitration, shall be liberally construed."

and because his decision must be based on the factors set out by the legislature in ORS 243.746(4).[9] An additional safeguard is found in ORS 243.752, set out in note 1, which provides for judicial review based on those factors. In short, the statutes provide detailed standards to guide an independent arbitrator's decision and judicial review is available as a safeguard against arbitrariness. The danger of discriminatory action does not outweigh the necessity for binding arbitration in the efficient administration of the legislative policy.

■ As to the City's contention that the arbitrator is neither elected nor otherwise politically responsible, we observe that an arbitrator appointed by ERB to

---

[9] ORS 243.746(4) provides:

"(4) Where there is no agreement between the parties, or where there is an agreement but the parties have begun negotiations or discussions looking to a new agreement or amendment of the existing agreement, and wage rates or other conditions of employment under the proposed new or amended agreement are in dispute, the arbitration panel shall base its findings, opinions and order upon the following factors, as applicable:

"(a) The lawful authority of the employer.

"(b) Stipulations of the parties.

"(c) The interest and welfare of the public and the financial ability of the unit of government to meet those costs.

"(d) Comparison of the wages, hours and conditions of employment of other employes performing similar services and with other employes generally:

"(A) In public employment in comparable communities.

"(B) In private employment in comparable communities.

"(e) The average consumer prices for goods and services commonly known as the cost of living.

"(f) The overall compensation presently received by the employes, including direct wage compensation, vacations, holidays and other excused time, insurance and pensions, medical and hospitalization benefits, the continuity and stability of employment, and all other benefits received.

"(g) changes in any of the foregoing circumstances during the pendency of the arbitration proceedings.

"(h) Such other factors, not confined to the foregoing, which are normally or traditionally taken into consideration in the determination of wages, hours and conditions of employment through voluntary collective bargaining, mediation, factfinding, arbitration or otherwise between the parties, in the public service or in private service."

[526]

carry out specified statutory functions acts in a public capacity. He is not to have a personal interest in the subject of the arbitration; therefore, this case is not analogous to cases in which the Supreme Court held unconstitutional statutes which delegated price-setting powers to interested private parties. *See General Electric Co. v. Wahle*, 207 Or 302, 296 P2d 635 (1956); *LaForge v. Ellis*, 175 Or 545, 154 P2d 844 (1945); *Van Winkle v. Fred Meyer, Inc.*, 151 Or 455, 49 P2d 1140 (1935). The arbitrator's decision is governed by the statutory criteria in ORS 243.746(4), set out above. The delegation of authority to the arbitrator does not create any substantial danger that his decision will be based on private interest.

In sum, ORS 243.752 does not violate the constitutional home rule provisions and is not an unconstitutional delegation of legislative power. The trial court erred in sustaining the City's demurrer to the alternative writ of mandamus.

Reversed and remanded.