Argued and submitted June 7, the decision of the Tax Court affirmed August 30, reconsideration denied September 29, 1988

## MT. SEXTON PROPERTIES, INC., et al,
*Appellants,*

*v.*

## DEPARTMENT OF REVENUE et al,
*Respondents.*

### (OTC 2510; SC S34654)

760 P2d 1320

Donald H. Coulter, of Myrick, Coulter, Seagraves, Myrick, Adams & Davis, Grants Pass, argued the cause and filed the brief for appellants.

Ted E. Barbera, Senior Assistant Attorney General,

Salem, argued the cause for respondent Department of Revenue. With him the brief was Dave Frohnmayer, Attorney General, Salem.

James H. Boldt, Josephine County Legal Counsel, Grants Pass, argued the cause and filed a brief for respondent Josephine County.

JONES, J.

## JONES, J.

This case presents the question whether plaintiff-taxpayers must receive specific notice of the judicial review of the Department of Revenue's determination of forest land values before those values can be used by county assessors to determine the property tax assessment for plaintiffs' land. Plaintiffs claim that the statutory scheme of notice and the notice of judicial review of the Department's valuations provided through publication were inadequate, so that an application of the Department's property values to plaintiffs' land is a violation of plaintiffs' due process[1] rights when that application comes after judicial review without personal notice to the plaintiffs.

Plaintiffs filed an action seeking declaratory judgment in the Oregon Tax Court, claiming that ORS 321.352(5) was unconstitutional on several grounds. The Tax Court denied plaintiffs' request for declaratory relief. 10 OTR 467 (1987). Plaintiffs appealed portions of the Tax Court decision to this court. We affirm the decision of the Tax Court.

### FACTS

Plaintiffs own several parcels of forest land in Josephine County. Prior to 1977, plaintiffs, or their predecessors in ownership, had received notices of and had paid property taxes on their land. At that time, plaintiffs' land and timber were taxed on an *ad valorem* basis, as was all other similar forest land in western Oregon. *Former* ORS 321.622 (*repealed by* Or Laws 1977, ch 892, § 51).

*Raising the Issue*

The following events combined to raise the issue in the present case:

1.   Early in 1977, the Department increased the valuation of forest land in western Oregon. These values were used by local assessors to determine the assessed value of forest land.

---

[1] Plaintiffs also alleged a violation of Article I, sections 10, 20 and 32, of the Oregon Constitution by mentioning these provisions in their assignments of error. In the course of their argument, however, plaintiffs make it clear that they are relying entirely on the federal constitutional analysis.

2. Plaintiffs, on April 28, 1977, and many other forest landowners throughout western Oregon at similar times, received notices of land valuation increases leading to significant assessment increases.[2]

3. Plaintiffs did not appeal any of these increases. Plaintiffs paid the taxes ultimately assessed against their property.

4. Many other taxpayers appealed the forest land valuations established by the Department.

5. Responding to widespread concern, the Oregon legislature established a special process for appealing the Department's valuations. Pursuant to this statutory appeal process, the other taxpayers' appeals of the Department's valuations were consolidated and given expeditious consideration at all levels.

6. Notices of these consolidated special appeals were published in newspapers of general circulation in each county in western Oregon where the Department's valuations were being appealed. This included Josephine County, the locus of plaintiffs' property.[3]

_____

[2] This notice of value change contained a standard notice of a taxpayer's right to appeal any such increase in valuation. The notice informed plaintiffs that:

"[i]f your estimate of the market value of the property disagrees with the market value shown, you should come to the County Assessor's Office as soon as possible (not later than May 1) to discuss the valuation. Further appeal may be made to the County Board of Equalization by filing with the County Clerk a petition for a hearing not later than the 3rd Monday in May."

[3] The notice was published each year during the appeal. Each year's notice was the same, except that the relevant years were inserted. The following notice was published in 1980:

"On March 18, 1980, pursuant to ORS 321.352, Boise Cascade Corporation, Longview Fibre, Weyerhaeuser Company, Medford Resources Corporation and Rough and Ready Timber Company, owning in the aggregate more than five per cent of the total forest land acreage subject to ad valorem taxation in the market area comprised of Jackson and Josephine counties, filed a representative appeal with the Department of Revenue contesting the values set by the Department in all zones and all site classes with respect to the January 1, 1980 forest land values for ad valorem taxation purposes in those counties. The 1980 forest land values are composed of the 1978 forest land value certified to each county assessor in 1978, plus a stumpage adjustment as required by ORS 321.352. The 1980 adjustments have been certified by the Department to each county assessor. The appeal contests the basic 1978 forest land value but not the stumpage adjustment thereto; both are on file for public inspection in the office of each county assessor.

"The Department must issue its order on the appeal not later than May 17, 1980. If _no_ order is issued the _relief_ requested in the appeal is deemed to have been

7. During the prosecution of these special statutory appeals, the original valuation change was suspended and, therefore, the valuation of plaintiffs' land was not changed. For the tax years that passed during the special appeals, plaintiffs, or their designated agents, received annual notices of valuation and assessment. The taxes were promptly paid without appeal.

8. The appeal of the Department's valuation changes for all forest land in western Oregon was resolved by this court's decision in *Publishers Paper v. Dept. of Revenue,* 292 Or 836, 644 P2d 1089 (1982), leading to a reduction in the Department's original valuations, but allowing some increase above the valuation applied to plaintiffs' land during the appeal of the Department's action.

9. The Josephine County Assessor, using the values determined by the Department and modified by this court in *Publishers Paper,* sent plaintiffs a notice of recomputed tax, including amounts owed for the tax years 1977-81.

10. After numerous delays, plaintiffs sought a declaratory judgment from the Tax Court that applying the recomputed tax would violate plaintiffs' due process rights.

The question before the court is made complex by a mass of intertwined statutes and procedures.[4] Plaintiffs' basic

---

denied. If an appeal from that order is taken to the Oregon Tax Court, the following statutory provisions will apply:

" 'If the tax court increases or reduces any of the values under appeal, the decree of the court shall apply to the valuation of all forest land in the designated market area for that year. An appeal may be taken to the Oregon Supreme Court from the decree of the tax court. Unless changed upon appeal to the Supreme Court, the tax court determination shall be binding upon the department and upon each assessor and taxpayer affected by such determination of value.' ORS 321.352(6).

"This statutory provision would apply to fix the 1980 valuation of all forest land in Jackson and Josephine counties and not just the lands of the above-named taxpayers."

[4] We summarize these statutes and proceedings to assist the reader in tracing the sinuous history of this complex matter:

| | |
|---|---|
| Tax Year 1976 | Default date for land values in the event of an appeal of 1977 values |
| April 28, 1977 | Plaintiffs receive notice of value increases |
| April-May 1977 | Appeals of value increases filed by other taxpayers |
| July 26, 1977 | SB 1077 (Or Laws 1977, ch 753) approved by Governor |
| July 28, 1977 | HB 3274 (Or Laws 1977, ch 892) approved by Governor |
| August 1977 | Existing appeals of department's valuations forwarded to |

claim is that the increased valuations cannot be applied to their property for previous tax years because they were not given adequate notice of an opportunity to join litigation concerning these valuation increases. Plaintiffs assert that inadequate notice would prevent the application of the valuation increases for previous years, because application with inadequate notice would violate plaintiffs' due process rights.

## Legislative Background

The controversy in this case concerns the second of two bills the legislature adopted in 1977 to deal with the concerns generated by the Department's increase in 1977 valuations. The first bill, SB 1077 (Or Laws 1977, ch 753), created a special appeal process for those who sought to challenge the Department's valuations of forest land. The second bill, HB 3274 (Or Laws 1977, ch 892, *codified at* ORS 321.257 to 321.372), repealed the first version, but adopted most of the special appeal provisions. It is this process of special appeal that is the subject of controversy in the present case.

The 1977 valuation increases led to a great number of appeals being filed. The prospect of so many appeals, and the certainly even greater number of dissatisfied taxpayers, led the legislature to conclude that the ordinary method of appealing assessments would not be adequate to ensure a rapid and comprehensive review of the Department's actions. The legislature therefore supplemented the regular appeal process by providing for a special appeal of the Department's determination of values. It is important to note that the special appeal process did not concern the assessment of individual parcels of forest land or alter the existing method of individual

|  | department; expedited consideration of appeals begun |
| --- | --- |
| October 3, 1977 | Effective date of SB 1077 (first law establishing special appeal process) and ORS 321.377 (providing for expeditious treatment of appeals of department's 1977 land valuations and requiring suspension of 1977 increases) |
| January 1, 1978 | Effective date of ORS 321.352 (present special appeal process, requiring use of lower values (1976 values) during appeal); effective date of repeal of SB 1077 (Or Laws 1977, ch 753) |
| April 20, 1982 | Date of opinion in *Publishers Paper v. Dept. of Revenue*, 292 Or 836, 644 P2d 1089 (1982) |
| November 19, 1982 | Plaintiffs receive notice of recomputed tax from Josephine County Assessor |

appeals of tax assessments. The special appeals were designed only to test the validity of the Department's land valuation for each type of forest land classification.

Because this case concerns the process of land valuation, we begin with a brief description of the process before and after the changes wrought by the 1977 legislation. Prior to 1978, ORS 321.622(1) directed that the Department should "appraise taxable timber and forest land and determine immediate harvest values in each of the counties west of the summit of the Cascade Mountains." ORS 321.622(2) directed that the Department make available to assessors the results of its appraisals, "which results shall include the immediate harvest value of the appraised timber and the true cash value of the forest land." Forest land was to be appraised at true cash value, as "determined under ORS 308.205."[5] ORS 321.617(3).

ORS 321.617(1) and (2) directed that the appraised value of nonexempt timber would be 30 percent of the immediate harvest value, which was to be determined

"from sales of public and private timber to be harvested within three years under the terms of the sale, from sales of private timber of a quantity that reasonably can be harvested within a three-year period, or, where sales are lacking, by valuation methods designed to arrive at a comparable value. * * *" ORS 321.605(6).

ORS 309.100 and ORS 306.515 to 306.580 provided for appeals of assessments, first to the county board of equalization and then to the Department, the Tax Court and, if necessary, to the Supreme Court, ORS 305.445.

Under this process there was a clear division of responsibility between the Department and the assessors. The Department was directed to determine the property values of forest land in western Oregon, based on certain general evidence. The Department was then to provide this information to county assessors. Using the Department's valuations of

---

[5] ORS 308.205 (1975) provided:

"True cash value of all property, real and personal, means market value as of the assessment date. True cash value in all cases shall be determined by methods and procedures in accordance with rules and regulations promulgated by the Department of Revenue. With respect to property which has no immediate market value, its true cash value shall be the amount of money that would justly compensate the owner for loss of the property."

forest land, the county assessor then would assess the property and notify the taxpayer. The taxpayer's rights to appeal necessarily would have included an appeal of the Department's valuations as applied to the txpayer's land. This individual appeal also could have included a challenge to the Department's methods in determining land values if the taxpayer could show an error which affected the individual assessment.

### *The New Appeal Process*

The 1977 legislature changed the process of appeal and the substance of forest land taxation. The legislature's initial response to the change in land valuations was to add the special appeal provision which is the subject of this case. This special appeal was originally added, without other changes, to the then existing *ad valorem* taxation system by Oregon Laws 1977, chapter 753.

The size of the valuation changes made by the Department in 1977 and the number of taxpayers affected caused concern that the ordinary appeal process would not be adequate. In response to this concern, legislation was introduced which would provide an expedited appeal. The bill was referred to the Senate Revenue and School Finance Committee. There was testimony that the normal appeal process would result in great delay and cost for both the taxpayers and the affected counties, and would lead to inconsistent results because not all taxpayers would appeal. The committee amended the bill to provide notice to all taxpayers of the special appeal. The approved bill provided that the effects of any increase in valuation would be postponed pending an appeal of the valuation, that the results of the special appeal would then become binding on all taxpayers, and that notice would be provided to ensure that all valuation changes possible could be considered in a consolidated action. *See* Minutes, Senate Revenue and School Finance Committee, April 27-28, and May 20, 1977.

This original version of the special appeal process was repealed effective January 1, 1978, by Oregon Laws 1977, chapter 892, section 52. It was replaced by a nearly identical provision in Oregon Laws, chapter 892, section 24, which was intended to have the same effect. *See* Minutes, House Revenue and School Finance Committee, June 16, 1977.

Oregon Laws 1977, chapter 892, in addition to repealing and replacing the special appeal process of Oregon Laws 1977, chapter 753, altered the type of taxation levied on forest land and timber in western Oregon. While it did this, and while it repealed all the above-cited portions of ORS chapter 321 setting forth the process of determining forest land values, the new law replaced these repealed statutes with a similar process for determining somewhat different substantive matters. ORS 321.352(1) provides that

"for the assessment year 1978 and 1979, forest land in western Oregon shall be assessed at true cash value for forest use on the basis of January 1, 1977, assessed values, established pursuant to ORS 321.622, (1975 Replacement Part), adjusted by the percentage change in the average stumpage value of young growth * * * in the market area in which the forest land is located. * * * For each assessment year after 1980, the value of forest land shall be the previous year's value as adjusted by the moving percentage change calculated under subsection (2) of this section."

Forest *land* valuation was now based on true cash value and the increased value of growing timber. Timber values were no longer to be taxed on an *ad valorem* basis. Instead, timber was to be taxed when harvested. ORS 321.272(1). The severance tax was to be computed on the stumpage value of timber harvested. The stumpage value was to be based on the purchase value of timber over three years within the timber value zones designated by the Department. ORS 321.282(1).

ORS 321.352(4) provides that the Department should determine and certify to the county assessors the true cash value of forest land, and that the assessors should use these values in the "preparation of the assessment and tax rolls of the county." ORS 321.352(5) provides for a special appeal of the Department's certification of the true cash value of forest land:

"At any time after the certification of values pursuant to subsection (1) of this section, but not later than March 20, five or more taxpayers owning in the aggregate not less than five percent of the total forest land subject to ad valorem taxation in a single land market area certified by the department may appeal any or all the base land class values in that area directly to the director of the department by filing a joint petition with the director in the manner provided for appeals

from orders of the county boards of equalization. Notice of the appeal shall be made in each county having values affected by the appeal, either by personal service by certified mail on each taxpayer affected, or by publication made once a week for two consecutive weeks in a newspaper of general circulation in the county. The notice shall designate the values appealed, and include a statement of the provisions of subsection (6) of this section."

During the appeal, the disputed land class values were to be replaced by the higher of either the value asserted by the representative group or the value used in the prior tax year. ORS 321.352(7). The determination of the appeal by the Tax Court, or by the Supreme Court, was to "be binding upon the department and upon each assessor and taxpayer affected by such determination of value." ORS 321.352(6). Plaintiffs challenge the application of the determinations of the proper land values because, they argue, they were not given adequate notice, even though defendants complied with the minimum notice of ORS 321.352(5).

## PLAINTIFFS' COMPLAINT

Plaintiffs have assigned nine errors to the decision of the Tax Court. Five of these errors claim a violation of plaintiffs' due process rights in some aspect of the statutory process of consolidation and notice of the special appeal. Plaintiffs also claim that the published notice provided did not comply with the statutory requirements, that the consolidation of appeals in 1977 was premature, and that the Tax Court erred in dismissing Josephine County as a party.[6]

### Standing

■ Before turning to the question of notice, however, plaintiffs and defendants have raised the preliminary question whether plaintiffs have standing to challenge the provisions of

---

[6] Because of our resolution of this case, we need not decide the question whether Josephine County would be a proper party in an action where a refund of property taxes was ordered. We note that Josephine County argued that it need not be named as a party because: "Josephine County taxing authorities are subject to the supervision of the Department of Revenue regarding administration of the tax laws, and particularly regarding those matters raised by plaintiffs in the complaint," which, because ORS 305.120 empowers the department to "see that revenue officers comply with the tax and revenue laws," would allow the department to order Josephine County to make any necessary refund.

ORS 321.352. Defendants argue that plaintiffs can show no injury as a result of the application of the statute. By the terms of the statute, the Department is to develop and certify land values to the county assessors. If these values are appealed, the assessors are to use a lesser amount until the proper values are established after a review of the Department's valuations by the Tax Court and the Supreme Court. Defendants correctly point out that in this case the result of the special appeal was a significant reduction in the valuation of plaintiffs' land, and thus a reduction in the amount that plaintiffs would otherwise have owed for the tax years 1977-81.

The fact that plaintiffs benefited from the appeal by others does not, however, mean that plaintiffs might not have standing to object to a judicial determination of their individual rights without sufficient notice. Plaintiffs' ultimate objection is to the provisions in ORS 321.352(6) and 321.377(5) that the final determination of the courts "shall be binding upon the Department and upon each assessor and taxpayer affected by such determination of value." If such a provision violates plaintiffs' due process rights to notice, then plaintiffs have standing to test the application of the statute.

In declaratory actions, as in other actions, a justiciable controversy is one where the "parties hav[e] existing and genuine rights or interests [at stake in a] * * * controversy of a nature as to lend itself to final judgment in law or equity on rights, status or other legal relationships of one or more of [the] real parties in interest." *State Farm Fire & Cas. v. Reuter,* 294 Or 446, 449, 657 P2d 1231 (1983). Plaintiffs have raised a justiciable question concerning whether the recomputed taxes constitutionally can be applied to their land; therefore, they have standing to test their rights in court. Because of our decision in this matter, we need not examine the question of the outcome if plaintiffs prevailed in their claim that the recomputed tax should not have been applied to their land.

*Preserving the 1977 Appeals*

This question of standing arose out of the Tax Court's language disposing of one of plaintiffs' claims. The effective date of most of Oregon Laws 1977, chapter 892, was January 1, 1978. However, section 53, *codified at former* ORS

321.377,[7] contained an emergency provision stating that that section would go into effect upon passage. Section 53 was designed to preserve existing appeals challenging the Department's 1977 valuations. It provided that the appeals already filed with the county boards of equalization should be passed on to the Department, where they were to be given expédited consideration. As with the special appeals under ORS 321.352, the assessors of counties where there were such consolidated appeals under section 53 were directed to delay implementation of the full increased valuation for all taxpayers until the consolidated appeals were settled, at which time the

---

[7] *Former* ORS 321.377 (*repealed by* Or Laws 1985, ch 759, § 40) provided, in relevant part:

"(1) Notwithstanding ORS 308.205, for the assessment year 1977, forest land in western Oregon shall be assessed at true cash value for forest use on the basis of January 1, 1977, assessed values, established pursuant to ORS 321.622 (1975 Replacement Part).

"* * * * *

"(3) All orders of county boards of equalization changing the base land class values of forest lands from the values determined by the department and made available to county assessors under ORS 321.622 (1975 Replacement Part) as of January 1, 1977, are null and void. 'Base land class' means a category of land quality used by the department in its determination of forest land values as of January 1, 1977. Within 10 days after July 28, 1977, the clerk of each county board of equalization to which any appeal has been taken requesting a change of base land class values shall file with the department a copy of the petition filed with the board and a copy of the file of the board with respect to such petition, including a copy of any minutes or order of the board. The petition to the board with respect to base land class values shall be deemed filed with the department upon such filing by the clerk of the board. Unless the right to a hearing is waived by the petitioner and the department, after giving notice of a time and place for hearing the petition, the department shall hear the petition not earlier than 15 days and not later than 45 days from the filing by the clerk of the board with the department. The order of the director shall be issued not later than 60 days following the filing with the department, and if not issued within that time, the relief requested in the petition as to base land class values shall be deemed to have been denied. All issues other than the issue of base land class value which are or were raised before boards of equalization shall be determined by such boards and appealed as otherwise provided by law.

"* * * * *

"(5) If the tax court increases or reduces any of the base land class values under appeal, the decree of the tax court or if changed upon appeal, the decision of the Supreme Court, shall apply to the valuation of all forest land of the same base land class in the designated market area for the year 1977. An appeal may be taken to the Oregon Supreme Court from the decree of the tax court. The final determination of the tax court or the Supreme Court on appeal shall be binding upon the department and upon each assessor and taxpayer affected by such determination of value."

Department's values, as modified on review, were to be used in recomputing all taxpayers' obligations.

■       Plaintiffs' challenge to the assessment of a recomputed tax for the year 1977 rests not only on a due process challenge to the effects of this legislation, but also on the argument that the appeals mentioned in this legislation were prematurely consolidated. Plaintiffs' claim of prematurity rests on an argument that the emergency clause of section 53 was invalid. As did the Tax Court, we conclude that, while the emergency clause was improperly attached, removing the effect of the emergency clause did not make the consolidation of appeals improper.

Plaintiffs contend that the emergency clause of section 53 was invalid because the section was a measure regulating taxation. In this regard plaintiffs are correct. Plaintiffs also contend that because of the invalid emergency clause, this section could not go into effect until January 1, 1978. In this plaintiffs are incorrect.

Section 53 could not go into effect upon passage, despite the emergency provisions, because section 53 was an act regulating taxation and providing for temporary exemptions during an appeal. Article IX, section 1a, of the Oregon Constitution provides that the legislature cannot declare an emergency "in any act regulating taxation or exemption." Section 53 can be considered separately from the other sections of Oregon Laws 1977, chapter 892, for the purpose of determining its constitutionality under Article IX, section 1a, *Bernstein Bros. v. Dept. of Rev.,* 294 Or 614, 661 P2d 537 (1983), but this does not make section 53 any less an act regulating taxation.

Section 53 did not create new methods of taxation or new taxes, but it did regulate taxation by specifying the duties of the Department and of assessors with regard to taxation and altered the timing of the imposition of taxes by providing special methods for taxation during certain appeals. Article IX, section 1a, was adopted to preserve the right of a referendum on any matter concerning taxation. *Multnomah County v. Mittleman,* 275 Or 545, 550, 552 P2d 242 (1976). This court has held that a statute which alters the duties and powers of tax assessors cannot become law under an emergency provision. *State ex rel Smith v. Kozer,* 121 Or 459, 255 P 900 (1927).

Striking the emergency clause means that the effective date of section 53 was October 3, 1977, not, as plaintiffs contend, January 1, 1978. The provision setting the effective date of January 1, 1978, for the rest of the act specifically excepted section 53. Because the emergency clause was made ineffective, section 53 went into effect 90 days after the end of the session.

■ Plaintiffs have made no showing that consolidation at any time violated any of plaintiffs' rights. The effect of consolidation was to expedite the appeals already filed and to delay implementation of the Department's full increased valuations until these valuations had been finally determined pursuant to ORS 321.377(5) and (6). Plaintiffs' complaint concerning the 1977 appeals is not that they were consolidated, but that the results of the consolidation were applied to plaintiffs in the notice of recomputed tax. The expeditious handling of these appeals did not infringe any of plaintiffs' rights. The statutes in question adequately preserved the 1977 appeals filed. The effect of the statute was to make the individual appeals into a consolidated challenge to the Department's valuations. Plaintiffs' claim concerning the 1977 appeals, aside from the unique question of the effect of the emergency clause, is otherwise the same as the issue for subsequent tax years: Is it constitutionally proper to apply a judicial decision regarding the propriety of the Department's forest land valuation to plaintiffs when that judicial decision was prosecuted by others without direct personal notice to plaintiffs?

*Adequate Notice*

■ We now turn to the merits of plaintiffs' due process claim. The stipulated facts show that the first notice of any additional property tax for the tax years 1977-81 was the assessor's notice of recomputed tax that plaintiffs received on December 16, 1982. Plaintiffs claim that, as persons whose property rights were being determined by litigation, they had a constitutional right to personal notice of the litigation before it was initiated. Absent that notice, plaintiffs claim that the judicial determination of rights constitutionally cannot be applied to them.

Plaintiffs' argument fails because they have mischaracterized what was at stake in the litigation, and thus

have mischaracterized the degree of notice they were due. In their appeal from the decision of the Tax Court, plaintiffs argue that they could not be assessed the recomputed tax because the notice provisions of ORS 321.352 were inadequate to satisfy the due process requirements of the United States Constitution as set forth in *Mullane v. Central Hanover Bank & Trust Co.,* 339 US 306, 70 S Ct 652, 94 L Ed 865 (1950), and subsequent cases.

The implied right of notice in the due process clause of the Fourteenth Amendment, as with other aspects of due process, varies with the type of proceeding and the type of interest involved. *Greene v. Lindsey,* 456 US 444, 450, 102 S Ct 1874, 72 L Ed 2d 249 (1982). The cases on which plaintiffs rely, beginning with *Mullane* and extending to *Mennonite Board of Missions v. Adams,* 462 US 791, 103 S Ct 2706, 77 L Ed 2d 180 (1983), concern the determination of the rights of specific individuals through litigation. The dispute in the present case arises not out of the determination of individual rights through litigation, but instead arises as a challenge to an administrative rulemaking proceeding.

ORS 321.352 provides for administrative determination of the value of forest land with a special added opportunity of appeal after the value is promulgated. ORS 321.352(1) states that the Department shall use the January 1, 1977, land values, "established pursuant to ORS 321.622," with certain adjustments. *Former* ORS 321.622[8] required that the Department set assessed values of forest land in accordance with other provisions, including ORS 308.205 (1977), which required that "[t]rue cash value in all cases shall be determined by methods and procedures in accordance with rules and regulations promulgated by the Department of Revenue."

The legislature established the procedures whereby the Department was to determine the land values and forward these to the county assessors. It is only after the assessor receives such notice from the Department and uses it to fix each taxpayer's obligation that plaintiffs' individual rights are

---

[8] *Former* ORS 321.622 was repealed by Oregon Laws 1977, chapter 892, section 51. The fact that Oregon Laws 1977, chapter 892, was also the source of ORS 321.352 serves as a clear indication that the legislature did not intend to alter the rulemaking characteristics of the department's forest land valuation process.

at stake. At that point, where plaintiffs as individuals have their rights finally established, the due process notice requirements increase, until, if litigation over plaintiffs' individual rights occurs, plaintiffs would be entitled to the fullest due process notice. *Mullane v. Central Hanover Bank & Trust Co., supra,* 339 US at 212-13. For example, now that the individual assessments of plaintiffs' property have been determined, that amount could not be altered without notice to plaintiffs and an opportunity for plaintiffs to appeal the propriety of the assessment. As a part of that challenge, plaintiffs can test the adequacy of their notice concerning such preliminary matters as the rulemaking determination of land class values.

When such challenges are made, the court wherein the challenge is raised must determine if plaintiffs received adequate notice to satisfy the due process requirements of the Fourteenth Amendment. In this case plaintiffs were provided notice through the rulemaking procedures of the Department that forest land values were being determined. ORS 321.352(5) gave plaintiffs a special opportunity to appeal that determination. Had they done so, they would have been eligible to join with other appellants in the special appeal process established by ORS 321.352. This appeal would not, however, have determined plaintiffs' rights in a final sense. That final determination only comes when the assessor has calculated the amount owed by each taxpayer, taking into account all the individual variables that make each tax lot unique.

■ The publication notice and the statutory scheme gave plaintiffs notice of their opportunity to be heard. Statutes give constructive notice of the effects set forth in the statutes. *School Dist No. 12 v. Wasco County,* 270 Or 622, 632, 529 P2d 386 (1974). The statutory provisions for additional notice through publication and the option of individual notice were not constitutionally required. If there had been a failure to provide the statutorily required minimum, the subsequent assessments would have been invalid for failure to abide by the statutory requirements.

*Meeting the Statutory Requirements*

■ In the present case, the notice provided satisfied the statutory requirements. Plaintiffs suggest that the notice was inadequate because of the requirement in ORS 321.352(5) that "[t]he notice shall designate the values appealed," which they

read as a requirement that the notice should have specified and listed the values established by the Department. In this plaintiffs mistake the purpose of the notice. The first version of the special appeal process, SB 1077, required that the Department publish a list of the land class values and that there be a notice of the appeal setting forth the land class values appealed. The final version of the special appeal legislation, *codified at* ORS 321.353, contains only the requirement of the notice of appeal. From this change, plaintiffs assume the legislature intended that the notice of special appeal should contain the same details originally required for the Department's notice of valuation.

The legislative history, however, does not support this assumption. There is no indication that the legislature ever considered the notice of the Department's valuation to be interchangeable with the notice of a special appeal. The special appeal process was established to expedite one part of the normal appeal process. Individual appeals can be based on several questions which might arise after an individual assessment is made. Such an appeal could raise the validity of the Department's valuation, as applied by the assessment, but the resolution of such a question by an individual appeal would not thereby correct the valuation errors for other taxpayers.

The special appeal process allows general questions concerning the rulemaking process which established land class values for all taxpayers to be settled as a whole rather than on an *ad hoc* basis. Within this context, the notice requirement of the special appeal process was designed to enhance the "class action" attributes of the appeal. While the special appeal is not a class action, and was not intended to be a class action, the legislature did intend that it be similar to a class action in that the participants and the issues raised were representative and inclusive. Thus, the notice requirement was designed to inform the public if any class of values was not being appealed. The notice published during the appeal met those requirements by informing the public that all classes of values were being appealed.

The statutory requirements for notice of the special appeal were met. At that point in the process, plaintiffs had no right to greater notice. "The different notice requirements * * * can be explained by the difference in the overall statutory

scheme of notification provided throughout the tax assessment process." *Grant County v. Guyer,* 296 Or 14, 24, 672 P2d 702 (1983).

## CONCLUSION

■ Due process does not require that every potentially affected party be notified prior to the initiation of procedures established by a legislative scheme, even if the eventual outcome is a property tax assessment. Due process is satisfied if the property owner is given an opportunity to be heard prior to the "imposition of the assessment as a charge on the land." *Brown v. City of Salem,* 251 Or 150, 155, 444 P2d 936 (1968) (quoting *Utley v. St. Petersburg,* 292 US 106, 109, 54 S Ct 593, 78 L Ed 1155 (1934)).

Plaintiffs' failure to join in this special appeal did not deprive them of any individual rights. The land class values set by the Department had not yet been used by the assessors to establish finally the assessed values of plaintiffs' property. The initial litigation over the Department's action came prior to any effect on plaintiffs' property rights. The statutes establishing the special litigation process specifically required that there would be no effect on plaintiffs' property until after review, at which time the values would be applied through assessment.

Plaintiffs had no due process right to personal notice of this litigation. The fact that the outcome of the litigation affected plaintiffs' rights does not itself give plaintiffs an absolute right to personal notice. The effect stemmed from the actions of the Department in setting the land class values. That this departmental rulemaking decision was reviewed by the courts does not constitutionally increase the notice requirements.

Plaintiffs received notice of the assessment of the recomputed taxes on their property, and of their right to appeal that recomputation. During such an appeal, plaintiffs could have raised questions concerning the accuracy of the classification of their land, the accuracy of the assessment's calculations, and other matters. Plaintiffs raised only the adequacy of the notice of the litigation concerning the department's determination of land class values. The notice

requirements of ORS 321.352 were constitutionally adequate for the rulemaking procedures that they accompanied.

The decision of the Tax Court is affirmed.