Argued and submitted October 4, 1995, judgment vacated and remanded with instructions May 22, petition for review denied October 22, 1996 (324 Or 322)

## ADVANCE RESORTS OF AMERICA, INC.,
an Oregon corporation,
*Appellant,*

*v.*

## CITY OF WHEELER, OREGON,
a municipal corporation,
*Respondent.*

(93-2074; CA A86724)

917 P2d 61

Scott J. Schaub argued the cause for appellant. With him on the briefs was Kulla, Ronnau & Schaub, P.C.

William K. Sargent argued the cause and filed the brief for respondent.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Plaintiff, a business that operates recreational vehicle parks, challenges the constitutionality of a local ordinance that imposes a tax on, among other things, the rental of hotel and other temporary lodging space. The ordinance contains a clause declaring that the measure is to take effect immediately upon passage. Plaintiff contends that a tax ordinance may not constitutionally take effect upon passage but must allow for referral by the voters. The trial court entered summary judgment for defendant, the City of Wheeler (the city), concluding that, although including the emergency clause in the local tax measure was unconstitutional, the appropriate remedy is to sever the emergency clause from the balance of the enactment. Plaintiff appeals, arguing that the trial court erred in failing to declare the entire ordinance invalid. We conclude that the trial court correctly decided the merits of plaintiff's challenge, but we vacate and remand for entry of a judgment properly containing a declaration to that effect.

The relevant facts are undisputed. On June 15, 1993, the city adopted Ordinance 93-1, which requires "operators," including hotel proprietors, to collect taxes from occupants of space rented for lodging purposes. The taxes collected or accrued by operators constitute a debt owed by the operator to the city. Operators are required to state the amount of the tax on any receipt given to lodgers, register with the local tax administrator and file returns showing the amount of the tax collected. Operators who fail timely to remit the taxes may be required to pay 10 to 15 percent of the tax due, plus interest, as a penalty. Ordinance 93-1 also contains the following clause:

> "*Section 23*. It is hereby adjudged and declared that an emergency exists since the tourist season has started and the City needs revenues now, and that this Ordinance shall take effect immediately upon passage."

Plaintiff operates a recreational vehicle park within the city limits of Wheeler. On June 21, 1993, the city mailed a letter to plaintiff, which contained the following statement:

"The City Council passed a Transient Lodging Tax Ordinance at the June 15 Council meeting. A copy of that ordinance is enclosed.

"Section 6 states that 'Operators engaged in business at the time [the] Ordinance is adopted must register not later than (30) calendar days after passage of [the] Ordinance.' That deadline is July 15, 1993. A registration form is also enclosed."

On July 15, 1993, plaintiff initiated this action for declaratory relief. In its first claim for relief, plaintiff requested a declaration that Ordinance 93-1 is void and unenforceable, because it was adopted in violation of Article IX, section 1a, of the Oregon Constitution, which plaintiff contended prohibited the adoption of a tax measure containing an emergency clause. In its second claim for relief, plaintiff requested a declaration that it is not subject to the requirements of Ordinance 93-1, because it is not an "operator" of a hotel or other relevant establishment within the meaning of the ordinance.

Plaintiff moved for summary judgment. The city opposed the motion, without filing a summary judgment of its own. In its memorandum in opposition, however, the city argued that plaintiff's complaint should be dismissed as moot because the applicable 30-day deadline for referral of the ordinance had passed and, in the alternative, because plaintiff, being a corporation, lacked standing to bring a challenge on the basis of a loss of referendum rights. The city also argued that, even if it was improper to include the emergency clause in Ordinance 93-1, the proper remedy is merely to sever the clause from the balance of the enactment.

The trial court held that the matter was not moot and that plaintiff, a corporation potentially subject to the provisions of the ordinance, did not lack standing to challenge the constitutionality of the ordinance. The court further concluded that, as to the first claim, that including an emergency clause in the tax ordinance violated Article IX, section 1a, but that the clause should be severed from the remainder of the ordinance. The court finally held that, as to the second claim, there remained genuine issues of material fact as to the applicability of the ordinance to plaintiff. The trial court then

entered an order severing the emergency clause and denying plaintiff's summary judgment motion.

Plaintiff objected to the form of the court's order. It argued that it was inappropriate effectively to dismiss the first claim, because the city had not filed a motion for summary judgment of its own. The trial court withdrew its order and entered a new one, which "granted" plaintiff's motion for summary judgment as to the first claim, because there were no genuine issues of material fact, but further ordering that *defendant* was entitled to judgment as a matter of law and that plaintiff's first claim was dismissed. The court entered a Rule 67 B judgment to that effect, from which judgment plaintiff now appeals. Plaintiff raises several assignments of error as to the substance of the court's decisions and the procedure by which the decisions were rendered. The city, however, raises a preliminary matter of standing, which we must address before turning to the merits of plaintiff's appeal.

■ According to the city, plaintiff lacks standing to challenge the constitutionality of Ordinance 93-1, because plaintiff is a corporation. The city argues that the crux of this case is that plaintiff has been deprived of the right to refer Ordinance 93-1, because of the existence of the emergency clause. The problem is, the city reasons, only voters may exercise the right to refer legislation, and corporations such as defendant cannot vote. As a result, the city concludes, plaintiff's lawsuit amounts to a complaint as to the loss of a right that plaintiff never had in the first place. Plaintiff responds that the city's argument rests on a faulty premise, namely, that the crux of the suit is that plaintiff has lost the right to refer the ordinance. Plaintiff concedes that it has no such right. Instead, plaintiff asserts, the gravamen of the action is that the ordinance was unconstitutionally adopted, is invalid in its entirety and may not apply to plaintiff or anyone else. For that reason, plaintiff argues, it has standing. We agree with plaintiff.

At the outset, we note that the city's argument is flawed in concept, in that it confuses different notions of "standing" in the context of an action for declaratory judgment. As the Supreme Court noted in *Eckles v. State of Oregon*, 306 Or 380, 760 P2d 846 (1988), *appeal dismissed*

490 US 1032, 109 S Ct 1928, 104 L Ed 2d 400 (1989), the term "standing," tends to be used in two different senses:

> "Ordinarily, 'standing' means the right to obtain an adjudication. It is thus logically considered prior to consideration of the merits of a claim. To say that a plaintiff has 'no standing' is to say that the plaintiff has no right to have a tribunal decide a claim under the law defining the requested relief, regardless whether another plaintiff has any such right. When this court has used the term 'standing,' the term has for the most part been used in this sense. * * *

> "In contrast, 'standing' is also sometimes used to refer to the existence of a substantive personal right. Used in this sense, 'standing' is concerned with the merits of a claim. To say that a plaintiff has 'no standing' is to say that no right of the plaintiff was violated, regardless whether the conduct of a defendant was in general unlawful or unlawful as to some other person. This use of 'standing' should be avoided because it easily confuses the right to obtain an adjudication of a claim for relief with the right to obtain the relief itself."

*Id.* at 383-84 (citations omitted). In a declaratory judgment action, the court said, a plaintiff is entitled to seek an adjudication of a claim as long as it has standing in the first sense. That the plaintiff may or may not be entitled to the particular relief that has been requested is irrelevant to a determination of the justiciability of the claim. *Id.*

In this case, the city has failed to discriminate between the two types of "standing" the court described in *Eckles*. It asserts that, because plaintiff is not entitled to a particular form of relief, plaintiff may not seek any relief at all. That is incorrect. *Id.* Moreover, the city's argument mischaracterizes the nature of plaintiff's claim. Plaintiff is not requesting that the court allow corporations to refer tax measures; plaintiff is alleging the invalidity of Ordinance 93-1, which it contends otherwise will apply to it.

Instructive on that point is the Supreme Court's decision in *Budget Rent-a-Car v. Multnomah Co.*, 287 Or 93, 597 P2d 1232 (1979). In that case, the plaintiff was a Washington corporation that requested a declaration that a county tax on vehicle rentals was invalid on the ground that the tax had been enacted without compliance with, among other

things, a statutory requirement for voter approval. Although corporations are not entitled to vote on such measures, the court nevertheless held that the plaintiff had "standing" to request a declaration as to the validity of the tax, because the plaintiff had alleged that it would have been subject to the tax and to penalties for failing to comply with its provisions. *Id.* at 96. So also in this case, plaintiff has alleged that, without the requested declaratory judgment, Ordinance 93-1 will apply to it and will result in the imposition of penalties should plaintiff fail to comply with its provisions. We conclude that plaintiff's corporate status does not deprive it of "standing" to challenge Ordinance 93-1.

■ The city argues that, even if plaintiff has standing to assert its declaratory judgment claim, the fact remains that the matter is no longer justiciable, because no voter filed a referendum petition within the time prescribed by law. Relying on *State et al. v. Gibson*, 183 Or 120, 191 P2d 392 (1948), and *Smith v. Patterson*, 130 Or 73, 279 P 271 (1929), the city argues that, because the time for filing a referendum petition has passed, no referendum now can be ordered, and plaintiff's constitutional challenge is moot. Once again, however, the city confuses the authority of the courts' authority to grant specific relief with the courts' authority to adjudicate a matter at all.

The cited cases bear out the point. *Gibson* was a mandamus proceeding to compel the defendant auditor to accept and file a petition to refer an ordinance. *Gibson*, 183 Or at 121. The court held that it could not grant the relief requested, because—whether or not the emergency clause was valid—the deadline for submitting referral petitions had passed by the time that the plaintiffs requested the auditor to act. *Id.* at 125. Similarly, in *Patterson*, the plaintiff challenged the constitutionality of a statute enacted with an emergency clause. The court assumed, without deciding, that the statute was subject to Article IX, section 1a, and went on to say that the inclusion of the emergency clause would not invalidate the entire act but only the emergency clause itself. Thus, the court held that the plaintiff was not entitled to the relief he sought, not that the court lacked authority even to hear the claim. *Smith*, 130 Or at 81. We turn, then, to plaintiff's assignments of error.

■ Plaintiff contends that the trial court first erred in concluding that the emergency clause in Ordinance 93-1 may be severed from the balance of the ordinance. According to plaintiff, the unavoidable consequence of enactment of an ordinance in violation of Article IX, section 1a, is the invalidity of the entire ordinance. The city responds that the prohibition against including an emergency clause in tax or revenue measures simply does not apply to cities; therefore, whether the court could have severed the clause is academic. In any event, the city argues, assuming that Article IX, section 1a, does apply, the appropriate relief is severing the offending emergency clause, not declaring the entire enactment invalid. Of necessity, we begin with the city's argument that the constraints of Article IX, section 1a, do not apply to cities at all.

Article IX, section 1a, adopted by initiative in 1912, provides:

> "The Legislative Assembly shall not declare an emergency in any act regulating taxation."

In determining whether that provision applies to the city, we apply the same method of analysis that we apply to the construction of statutes. *Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 560, 871 P2d 106 (1994). We examine the text of the provision in its context, which includes related provisions, earlier versions of the same provision, and judicial decisions construing those provisions. *McIntire v. Forbes*, 322 Or 426, 436, 909 P2d 846 (1996). Because Article IX, section 1a, was adopted in a context that bears directly on the issue of its applicability in this case, we set it out in some detail.

The genesis of the disputed provision traces back to the adoption of the referendum provisions of the Oregon Constitution in 1902, which include, in relevant part, the following language:

> "The legislative authority of the state shall be vested in the Legislative Assembly, * * * but the people reserve to themselves power to propose laws and amendments to the Constitution and to enact or reject the same at the polls, independent of the Legislative Assembly, and also reserve power at their own option to approve or reject at the polls

any Act of the Legislative Assembly. * * * [The referendum power] may be ordered (except as to laws necessary for the immediate preservation of the public peace, health, or safety) either by a petition signed by five percent of the legal voters, or by the Legislative Assembly, as other bills are enacted. Referendum petitions shall be filed with the Secretary of State not more than 90 days after the final adjournment of the session of the Legislative Assembly which passed the bill on which the referendum is demanded."

Or Const, Article IV, § 1 (1902) (*repealed by* HJR No. 16 (1968)). Thus, under the terms of Article IV, section 1, unless an enactment included an emergency clause—by the terms of which enactment became effective immediately upon passage—any enactment of the Legislative Assembly was subject to the referendum power reserved by the people. By the same token, however, the legislature could prevent any enactment from being subject to the referendum power merely by attaching to the enactment a declaration of emergency. Given that the authority of the legislature to declare an emergency was considered beyond judicial review, *Kadderly v. Portland*, 44 Or 118, 148-51, 74 P 710 (1903), *reh den* 44 Or 118, 75 P 222 (1904), the legislature had virtually unfettered capability to circumvent the referendum power.

In that light, it is clear that the adoption of Article IX, section 1a, was intended to ensure that at least laws relating to taxation or exemption remain subject to the referendum power, and the courts have so held. *Multnomah County v. Mittleman*, 275 Or 545, 551, 552 P2d 242 (1976); *see also State ex rel. Smith v. Kozer*, 121 Or 459, 461, 255 P 900 (1927).

By its terms, Article IX, section 1a, constrains only the authority of "[t]he Legislative Assembly." Following the bare language of the provision, early decisions construed it to apply accordingly; the prohibition against enacting measures regulating taxation or exemption was held not to apply to cities or counties. *See Horner's Market v. Tri-County Trans.*, 256 Or 124, 126 n 2, 471 P2d 798 (1970), *overruled in part by Mittleman*, 275 Or at 557-58; *Garbade and Boynton v. City of Portland*, 188 Or 158, 164, 214 P2d 1000 (1950), *overruled in part by Mittleman*, 275 Or at 556-57.

In 1958, the voters amended the constitution to include the county "home rule" provisions of Article VI, section 10:

"The initiative and referendum powers reserved to the people by this Constitution hereby are further reserved to the legal voters of every county * * *."

With the adoption of the home rule provisions, the question arose whether home rule counties were subject to the prohibition in Article IX, section 1a, against including emergency clauses in measures regarding taxation or exemption. The Supreme Court answered that question in the affirmative in *Mittleman*, 275 Or at 554-55.

*Mittleman* was an action brought by Multnomah County to recover unpaid real property transfer taxes imposed by an ordinance that was enacted with an emergency clause. Notwithstanding the emergency clause, the ordinance was referred to the voters and ultimately defeated at the next general election. The county insisted upon enforcing the ordinance. The trial court found for the defendants on the ground that the ordinance had been rejected by the voters. This court reversed, holding that the referendum was a nullity. *Multnomah Co. v. Mittleman*, 24 Or App 237, 245, 545 P2d 622 (1975). The Supreme Court reversed, holding that, because Article IX, section 1a, applied to home rule counties, the existence of an emergency clause did not preclude the voters from validly referring the ordinance. *Mittleman*, 275 Or at 558.

The linchpin of the court's decision was the fact that the source of the referendum power for the voters in home rule counties lay in the 1958 constitutional amendment, which reserved to the county voters the referendum powers that already had been reserved by the people. Because those reserved powers had, by that time, been constitutionally qualified by the limitations of Article IX, section 1a, the court held that the referendum power reserved in 1958 to the voters in home rule counties came encumbered with those earlier qualifications. As the court explained:

"[T]he primary purpose and effect of the adoption in 1912 of Article IX, § 1a, was to make all tax measures subject to referendum and * * * this was accomplished by forbidding the

Oregon legislature from declaring an emergency in the enactment of such legislation. The result, in our judgment, is the same as if the *Oregon Constitution* included a provision expressly stating that all tax measures enacted by the legislature are subject to referendum.

"For the same reasons, we also conclude that at the time of the subsequent County Home Rule Amendment in 1958, the 'referendum powers reserved to the people' by the Oregon Constitution included then, and still include, the power of the referendum of all tax measures enacted by the Oregon legislature and that this referendum power could not then, and cannot now, be defeated by the declaration by the Oregon legislature of an emergency in the enactment of tax legislation.

"It follows, in our best judgment, that by the adoption in 1958 of Article VI, § 10 (the County Home Rule Amendment), the same 'referendum powers' are 'reserved to the legal voters of every [home-rule] county relative to * * * legislation passed by [such] counties'; that the purpose and effect of Article VI, § 10, was to reserve to county voters with respect to county tax legislation the same 'referendum powers' previously reserved to state voters with respect to state tax legislation; that this includes county legislation imposing new taxes; and that a home-rule county may not defeat the exercise of such 'referendum powers' by the declaration of an emergency in the enactment of such legislation. In other words, Article IX, § 1a, as we view it, is not *merely a restriction* upon the power of the Oregon legislature, but is a part of the 'referendum powers' reserved to the voters of Oregon."

*Mittleman*, 275 Or at 551-52 (footnote omitted; brackets in original).

In reaching its decision, the court expressly overruled its earlier decisions holding that Article IX, section 1a, did not apply to counties. *Id.* at 556-58. The court also noted that, although similar referendum powers had been reserved to the voters of cities, it did not consider the question of the applicability of Article IX, section 1a, properly before it, and it left the matter for another day. *Id.* at 557. The question left unanswered in *Mittleman* is the one squarely before us in this case.

The source of the referendum power at issue in this case—relating to the voters of cities, as opposed to home rule counties—is Article IV, section 1(5), adopted in 1968. That article provides that the initiative and referendum powers reserved by the people generally under Article IV, sections 1(2) and 1(3)

"are further reserved to the qualified voters of each municipality and district as to all local, special and municipal legislation of every character in or for their municipality or district."

In the light of *Mittleman*, there can be no question but that the restrictions of Article IX, section 1a, apply to the referendum powers reserved to the voters of cities and other municipalities. As in *Mittleman*, the source of the referendum powers reserved to the voters is the general reservation adopted in 1906. Before the adoption of the 1968 amendments, however, the 1906 referendum provisions had been qualified by the adoption of Article IX, section 1a. Therefore, as in *Mittleman*, when the voters enacted the 1968 amendments to the constitution further reserving the referendum power to voters in municipalities, the power that was reserved came with all limitations existing at that time, which included the limitations of Article IX, section 1a.

The city contends that the application of Article IX, section 1a, cannot be squared with the "plain language" of the provision, which refers only to the Legislative Assembly and not to local governments. The city's argument, of course, runs afoul of *Mittleman*. Alternatively, the city argues that the holding in *Mittleman* must be limited to home rule counties and not extended to cities. In support of that argument, the city notes that the referendum power originally was reserved to the voters of municipalities in 1906, six years before the adoption of Article IX, section 1a. *See* Or Const, Art IV, § 1a (1906) (*repealed by* HJR No. 16 (1968)). The problem with that argument is that it ignores the facts that the voters repealed the 1906 reservation in 1968 and that the provisions replacing it are materially indistinguishable from the provisions that, the Supreme Court held in *Mittleman*, had incorporated the limitations of Article IX, section 1a.

We conclude that Article IX, section 1a, applies to the city. Accordingly, it may not include an emergency clause in an ordinance regarding taxation or exemption. Because there is no dispute that Ordinance 93-1 concerns taxation and contains an emergency clause we turn to the question whether the emergency clause may be severed from the balance of the ordinance.

■ Plaintiff argues that a tax measure containing an emergency clause must be declared invalid in its entirety, because it was enacted through improper means. It contends that any other remedy, particularly the remedy of severing the offending emergency clause, has the effect of thwarting the original purpose of Article IX, section 1a, which was to permit tax measures to be referred to the people. The city contends that severing the emergency clause from the ordinance has no such effect. According to the city, the voters of Wheeler could have timely petitioned to refer Ordinance 93-1, and any objections that the existence of an emergency clause precluded such action could have been litigated in that context. Any declaration of the invalidity of the emergency clause, argues the city, would then have the effect of merely altering the effective date of the enactment.

■ It is well settled that an enactment is not rendered unconstitutional as a whole merely because it contains an emergency clause. The Supreme Court's decision in *Mt. Sexton Properties v. Dept. of Rev.*, 306 Or 465, 477-78, 760 P2d 1320 (1988), is on point. In that case, the plaintiffs initiated a declaratory judgment action challenging the constitutionality of a state statute relating to property tax assessment procedures. The plaintiffs challenged the statute on a number of grounds, including that the statute had been enacted with an emergency clause in violation of Article IX, section 1a. The Supreme Court ultimately agreed that the statute had been enacted in violation of Article IX, section 1a, and struck the emergency clause from the balance of the enactment, resulting in the effective date of the act being adjusted to 90 days after the end of the legislative session at which it was enacted. *Id.* at 477-78; *see also Patterson*, 130 Or at 81; *State ex rel. Pierce v. Coos County*, 115 Or 300, 305, 237 P 678 (1925).

Plaintiff contends that severability is only appropriate when there is a challenge to the constitutionality of the emergency clause itself, as opposed to a challenge to the constitutionality of the entire enactment. As authority for that proposition, plaintiff relies on *Mt. Sexton Properties*. We are, however, unable to find any support for such a rule of law in that case or in any other.

Plaintiff argues that, even if severance is otherwise appropriate, it is not so in this case, because the emergency clause on its face was a sham. The city argues that plaintiff failed to raise that argument below. We conclude that, even if the argument was raised below, it is unavailing. In *Greenberg v. Lee et al.*, 196 Or 157, 170-75, 248 P2d 324 (1952), the Supreme Court explained the applicable rule as follows:

> "When a given city ordinance discloses on its face that the claim of an existent emergency is false and contradicts other matter apparent on the face of the ordinance * * * the emergency declaration will be declared void."

*Id.* at 175. In this case, the emergency clause in Ordinance 93-1 declares that "an emergency exists since the tourist season has started and the City needs revenues now." There is nothing in the face of the ordinance contradicting that declaration. Moreover, even if that were not so, under *Greenberg*, the remedy would be severance of the emergency clause, not invalidation of the entire ordinance. *Id.*

We conclude that the trial court did not err in determining that Ordinance 93-1 unconstitutionally included an emergency clause and that the appropriate remedy is to sever the emergency clause from the remainder of the ordinance.

Plaintiff contends that the trial court still erred in dismissing its claim for declaratory relief, because the city had failed to request such relief in its own motion for summary judgment. Plaintiff argues that the only motion before the trial court requested that judgment be entered in favor of plaintiff, not the city, and that plaintiff's motion was not a proper procedural mechanism by which the court could dispose of the declaratory judgment claim in the city's favor. The court should have simply denied the motion for summary

judgment, plaintiff contends, and allowed the matter to proceed to trial. The city responds that the trial court had the discretion under ORCP 12 B to disregard the fact that the city had failed to file its own motion for summary judgment. In all events, the city argues, the court's error—if any—was harmless, given the fact that its decision on the merits was correct.

■■ The procedure by which the trial court disposed of plaintiff's summary judgment motion certainly was unusual. There was, as plaintiff observes, only one motion before the court: plaintiff's. The trial court *granted* that motion, but it entered judgment in *the city's* favor dismissing the declaratory judgment claim. In essence, it appears that the court *sua sponte* entered summary judgment for the city. To do so is error. *Hendgen v. Forest Grove Community Hospital*, 98 Or App 675, 677, 780 P2d 779 (1989). If, however, the party against whom the court entered summary judgment could not prevail as a matter of law, the error is harmless. *Id.* In this case, as we have held, plaintiff cannot prevail on its claim as to the unconstitutionality of Ordinance 93-1, the trial court having correctly concluded that the emergency clause should be stricken from the ordinance. The error in entering summary judgment for the city, therefore, was harmless.

■ We note, however, that the summary judgment itself merely orders the dismissal of plaintiff's first claim, without including a declaration as to the constitutionality of the ordinance and the severability of the emergency clause. A claim for declaratory relief may be dismissed only if there is no justiciable controversy. *Johnson v. Miller*, 113 Or App 98, 100, 831 P2d 71 (1992); *Reynolds v. State Board of Naturopathic Exam.*, 80 Or App 438, 441-42, 722 P2d 739 (1986). If there is such a justiciable controversy, the court must dispose of the matter by a judgment containing a declaration as to the matter in dispute. Accordingly, although we hold that the trial court correctly concluded that Ordinance 93-1 was enacted in violation of Article IX, section 1a, and that the emergency clause must be severed from the ordinance, we vacate the judgment and remand for entry of a judgment containing a declaration to that effect.

Judgment vacated and remanded with instructions.